HENRY L. MCGOWAN, APPELLANT, V. GEORGE NEIMANN ET AL., APPELLEES.

14 N. W. 2d 326

FILED APRIL 28, 1944. No. 31691.

*Torgeson & Halcomb,* for appellant.

*R. P. Kepler* and *John H. Kuns, contra.*

Heard before SIMMONS, C. J., PAINE, CARTER, MESSMORE, YEAGER, CHAPPELL and WENKE, JJ.

MESSMORE, J.

This action presents a boundary line dispute, as to the division line between the east and west half of section 18, township 17 north, range 51, west of the 6th P. M., in Morrill county, Nebraska. Plaintiff contends that he has been in actual, open, exclusive and adverse possession of the land which he purchased for a period of ten years or more, and thereby became the owner of 20.49 acres of land, the strip of land involved in this action.

Plaintiff's petition alleges, in substance, that he became owner on January 29, 1925, of the east half of section 18, township 17 north, range 51, west of the 6th P. M., described by metes and bounds; further alleges adverse possession ten years prior to the removal by defendants of an old division line fence and the erection of a new fence by the defendants in the spring of 1938.

Defendant George Neimann is the owner of the northwest quarter, and defendant A. J. Heinlein is the owner of the southwest quarter, of the section. The controversy is over the line running north and south across the section and separating the land of the plaintiff from that of the defendants. Plaintiff contends that the true line is not one dividing the section equally in half, the line contended for by the defendants, but that the true line is one arrived at by metes and bounds as described in the petition, and which placed it on a line almost parallel with the center line but at a sufficient distance farther west to give the plaintiff the 20.49 acres of the west geographical half of the section to which the defendants claim ownership.

The defendants' answers and cross-petitions admit their ownership of lands heretofore described; deny the allegations of the plaintiff's petition and admit the boundary line is in dispute. In a previous trial the trial court found generally in favor of the defendants and against the plaintiff; and that the action was brought under section 34-301, Comp. St. 1929, which provides for court action for settling disputed corners; further that the pleadings did not raise the issues of recognition and acquiescence of boundaries or adverse possession. The court fixed the boundary line as contended for by defendants, and entered decree accordingly.

On appeal to this court, in the case of *McGowan v. Neimann*, 139 Neb. 639, 298 N. W. 411, the cause was remanded for a new trial on the issues presented by the pleadings, holding that "section 34-301, Comp. St. 1929, is broad enough to, and does, authorize action in equity to determine boundaries of real estate, the ownership of which is in

whole or in part in dispute." In the instant case, the pleadings are the same.

The reply of the plaintiff to the answers and cross-petitions of the defendants is, in effect, a general denial. At the conclusion of the trial, defendants were granted leave to amend their cross-petitions and answers to conform to the evidence, alleging, in substance, that in June, 1928, the plaintiff acquiesced in and agreed to surrender the strip of land in dispute, and took possession of other land in lieu thereof, and has violated the agreement.

The trial court found the boundary line to be as contended for by the defendants and as set forth in what is referred to as the Chaloupka survey in the spring of 1928; found the survey to be correct in establishing the true section corners and boundaries and confirmed the survey; further that the plaintiff failed to establish adverse possession of the disputed strip of land, although the plaintiff actually held possession of the strip since his purchase in 1925; that in June, 1928, his statements and agreements with defendants and the witness Delashmett interrupted his adverse and hostile possession thereof; that from June, 1928, until this case was filed in May, 1938, his possession was not adverse. From this decree plaintiff appeals.

The record discloses: The plaintiff purchased the land described in the petition under an agreement for a warranty deed January 29, 1925, from one Roland Rodman. At the time of purchase, the boundaries of the land were pointed out to him; that is, the division fence as it existed previous to, at the time of and until removal by the defendants in the spring of 1938. From the time of taking possession of the land plaintiff's tenants farmed on the west up to the line; on the south up to the line, and on the north, with the exception of a small patch of alfalfa. On the east there is a strip of sod inside of the fence. The road on the east at the time was a trail but was improved in 1928 and moved a little farther to the east, creating a narrow strip of land, which he also farmed, between the old fence and the new fence. The plaintiff's testimony was to the effect that the new road was created two or three rods farther east.

Exhibit 1, received in evidence, is a plat of the east half of section 18, prepared by the county surveyor (Drake at that time), employed by the plaintiff to establish the boundary lines of his land. The surveyor was informed by plaintiff of his claim, and the land was checked by both. The surveyor furnished plaintiff a description of his land by metes and bounds. The starting point was the southeast corner of the east half of section 18, an accepted corner with concrete markers, on the plat of the surveyor's record, as disclosed by the records of Morrill county. County surveyor Chaloupka made a survey in May, 1928, and the trial court found that the Chaloupka survey resulted in the establishment of the true section corner, quarter-section corner, and the center of said section 18.

The evidence further discloses that the land in question had, for a number of years, been farmed up to the old fence line, and that the old fence had remained in such position for a period of more than 25 years. About the middle of June, 1928, defendant George Neimann drove to Kimball, met and talked with the plaintiff. He testified he told plaintiff: "I found out that our fences and old lines wasn't on the corners, the surveyor showed us the corners, and I would like him to move east so we could give ours up on the west and move east also because I was having trouble on the west of me with a farmer * * * ." The plaintiff said "he didn't want any trouble moving east, but, he says, 'In time if I can move east without any trouble you can have your's on the west.' " He further testified that the plaintiff did move east in 1935 and plowed the land from the old line to the road. This strip of land was put in crops and has been in constant cultivation. A few days later defendant A. J. Heinlein and the witness Delashmett called on the plaintiff at his home. Defendant Heinlein testified that he told plaintiff: "* * * we ought to do something about that line; that it had been drifting along and that there had been a dispute, and that we ought to get something done. Q. What did he say to that? A. And he said to let it go a little while until he seen what he would get on the east side. * * * I told

him that we could just as well fence it up and get these lines on the place where they belonged, and if anything happened that he should lose that I would give it back to him. Q. What did he say to that? A. He agreed to that; he didn't want to be moving back and forth; he said he would rather do it all at once. Q. Now, do you know whether or not he ever did get that on the east straightened out—and get possession of it? A. Yes; I am sure he got it."

The witness Delashmett testified that plaintiff said, "he wasn't interested in giving up anything until he got some land on the east—possession of that without any trouble" and that "he would like to be fair about anything." The witness testified that plaintiff told him "if he got that east side straightened up then he was willing to try to get this west side straightened up." There is some evidence that in accordance with the survey of 1928 there was a move of land lines among owners in an attempt to meet the geographical lines as established by such survey. Defendant Neimann further testified that he had a conversation with one Mayer, who owned land east of section 18, in township 17, and who testified he moved east to the line of the new survey; that after this conversation Mayer and defendant Neimann went to see the plaintiff and told him "that the land on the east side was there for him if he would move over there and that we could move east on the center line on the dividing—middle of the Section." All of these conversations were denied by the plaintiff, in that he did not remember what was said.

This brings us to the question, whether or not the conversations heretofore related were sufficient to consummate an agreement between plaintiff and defendants so that the claimed adverse possession of the plaintiff was interrupted and of no avail. Did the plaintiff, by taking possession of the strip on the east side of this section, ratify the conversations as to agreements and thus interrupt his adverse possession from and after June, 1928?

The plea of title to land by adverse possession must be proved by actual, open, exclusive and adverse possession

under claim of ownership for the full statutory period of ten years. *Conkey v. Knudsen*, 135 Neb. 890, 284 N. W. 737.

The plaintiff did not cease farming the strip of land up to the old line; nor did he, by his action, show that he had any intention of doing so. Nothing more was said by the defendants; nor was anything done from and after June, 1928, until the spring of 1938, when defendants removed the old line fence and erected another fence, in accordance with the Chaloupka survey.

The defendants contend that agreements made between adjoining landowners as to boundary lines are enforceable, and cite *Clark v. Thornburg*, 66 Neb. 717, 92 N. W. 1056, and *Ryan v. City of Lincoln*, 85 Neb. 539, 123 N. W. 1021. In the *Clark* case it is disclosed that an understanding existed between the parties that the location of the fence was temporary and that it should be removed when the true line was finally established. In *Ryan v. City of Lincoln, supra*, the plaintiff specifically testified that when he took title to the land he would not assert title against the city, which shows that plaintiff never intended to take title against the city by adverse possession.

In the instant case there was no agreement between the parties that the boundary should be changed to what is contended to be the true division line. From an analysis of the conversations which defendants contend constitute the agreement, we gather that plaintiff wanted to be sure that they had a right to dispossess him and that until they did dispossess him he would let the line stay where it was and where he claimed it was,—the old fence line.

The facts of this case show the applicability of the rule announced in *Ohme v. Thomas*, 134 Neb. 727, 279 N. W. 480, in which this court held: "Where a fence is constructed as a boundary fence between two properties, and where the parties claim ownership to the fence for the full statutory period of ten years, and are not interrupted in their possession or control during that time, they will, by adverse possession, gain title to such land as may have been improperly inclosed with their own."

Our attention is directed to exhibit 2, being the contract for warranty deed entered into by the plaintiff and the grantor Rodman, which states the description of the land to be the east half of section 18, township 17 north, range 51, a legal description. The contention probably is that the exhibit indicates that the east half-section, by government survey instead of a tract of land by metes and bounds, was sold to the plaintiff. Nothing further appears to have been presented by the defendants on this proposition other than directing our attention to this exhibit, perhaps on the theory that the rule sometimes announced, that the adverse possession of land cannot be extended beyond the calls of the deed means that possession by construction cannot be extended beyond the calls of the written instrument by virtue thereof, is applicable. However, if land be actually occupied beyond the calls of the deed, hostile to the true owner, the written instrument does not preclude such occupancy from being adverse. The occupancy does not refer to the deed, but to the fact itself and its hostile character. See *Frank v. Smith*, 138 Neb. 382, 293 N. W. 329, 134 A. L. R. 458; also *Rice v. Kelly*, 81 Neb. 92, 115 N. W. 625.

We conclude that the plaintiff has established adverse possession to the strip of land in controversy, as required by law.

The judgment of the district court is reversed and the cause remanded, with directions to enter judgment establishing the boundaries to the east half of section 18 as prayed for in plaintiff's petition, and defendants be permanently enjoined from interfering with such established boundaries.

REVERSED.