CLYDE L. MENTZER ET AL., APPELLEES, v. PHYLORY R. DOLEN, APPELLANT, IMPLEADED WITH FRANCIS S. DOLEN ET AL., APPELLEES.

131 N. W. 2d 671

Filed December 11, 1964. No. 35742.

Ginsburg, Rosenberg, Ginsburg & Krivosha, for appellant.

Davis, Thone, Bailey & Polsky and Frank C. Sidles, for appellees Mentzer.

C. M. Pierson, for appellees Dolen.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, and BROWER, JJ., and ROBERT L. SMITH and ROBERT L. FLORY, District Judges.

SPENCER, J.

This is an action in equity brought by Clyde I. Mentzer and Bernice I. Mentzer, husband and wife, plaintiffs and appellees, hereinafter referred to as plaintiffs or by their given names where necessary, against Phylory R. Dolen, defendant and appellant, hereinafter referred to as defendant, to quite title in the plaintiffs to the south 2 feet of Lot 1, Block 1, Ellendale addition to Lincoln, Lancaster County, Nebraska. The trial court quieted title in the plaintiffs, and defendant has perfected an appeal to this court. A mortgagee and the tenants in possession of Lot 1, Block 1, Ellendale addition, hereinafter referred to as Lot 1, were also made parties defendant, but are

not parties to this appeal and are not referred to further herein.

Plaintiffs are the owners of Lot 2, Block 1, Ellendale addition to Lincoln, Lancaster County, Nebraska, hereinafter referred to as Lot 2, which came to Clyde by inheritance in 1949. Previously it was owned by his parents. The house on Lot 2 was built in 1911 and 1912 by the father of Clyde. Clyde was born in the house in 1914 and lived therein until 1923 when the family moved next door, where he lived until he was married in 1940. The plaintiffs moved into the house on Lot 2 in 1941 and lived there continuously thereafter to the time of the trial.

Defendant became the owner of Lot 1 in 1917. She has never lived on the property but has held it as a rental unit over the years. The house on Lot 1 and the house on Lot 2 were both in existence when defendant acquired Lot 1, and both have remained in the same position since they were constructed, although improvements have been made on them. The two houses are approximately 8 ½ feet apart.

The plat shows both lots to be 40 feet north and south, and 128 feet east and west. A situation survey of Lot 2, made in November of 1963, discloses that the northeast corner of the house on Lot 2 is .05 feet north of the north lot line, or that it encroaches .05 feet on Lot 1. The northwest corner of the house is .35 feet north of the lot line. There are four window wells on the north side of the house. The east three are 1.35 feet, and the west one is 1.30 feet north of the lot line. The northwest corner of the garage, which is 3.85 feet from the west boundary of the lot, is .15 feet north of the lot line. A fence on the north, extending from the house to the garage, a distance of approximately 54 feet, is 1.95 feet north of the lot line. The seam line in the sidewalk in front of Lot 2, which has been in existence for more than 30 years, is 2.07 feet north of the lot line.

Clyde testified that previous to 1942 there were three

old buildings situated at the rear of Lot 2, which he wrecked and built the present garage. He set the present garage 2 feet south of the north line of the old buildings, and connected the fence to the garage with a 2-foot piece of wire. In 1945 he replaced an old wire fence extending from the house to the garage and which had been up for many years with a wooden picket fence. He replaced the picket fence between 1949 and 1952 with an ornamental iron fence which is still standing, although in 1957 he put cement blocks 2 blocks high under the fence, making a retaining wall to keep water from the north from running onto his property. These various fences were all in exactly the same location. In 1945 he replaced the north wall of the foundation of his house, and at that time constructed the window wells. In 1951 he installed a television ground 2 feet north of the house and approximately 12 feet east of the southeast corner of the house. He has always considered the sidewalk seam line as his north property line, and has maintained and used the property to a point even with that seam line. The present eaves have been on the house since 1911, and, with the gutter, extend out 24 inches from the house. Exhibits Nos. 30 and 32, which are photographs of portions of the house, clearly indicate the protrusion of the eaves and the gutter.

A neighbor, who has lived in the same block and directly west of the plaintiffs' property since 1929, testified to the existence of a 2-foot jog in the fence from the house to the garage for the last 20 years. Two friends, who helped during the time the foundation was relaid in 1945, testified to the installation of the window wells at that time. They also testified that they became acquainted with the plaintiffs in 1940, and that a jog of 2 feet has existed in the fence since that time.

Defendant's son, Leo F. Dolen, testified in substance that he has been familiar with Lot 1 since its acquisition by the defendant. The house thereon was remodeled in 1955 by and under his direction. The space between

the houses and up to the plaintiffs' house, has always been used and maintained by the defendant or the defendant's tenants. Previous to the installation of the cement blocks by the plaintiffs in 1957, there was no jog in the fence. Prior to 1957, the fence had no jog but was attached directly to the house and the garage. During the remodeling of the house on Lot 1 in 1955, the fence was not in existence, and the property between the two houses was used by the witness and his workmen for the remodeling purposes. This testimony was corroborated by witnesses who had assisted in the remodeling. Defendant's son also testified that any window wells which may have existed in 1955 must have been extended and squared subsequently, because they were then not as large as they are at the present time. He did not realize that the plaintiffs were encroaching on Lot 1 until his attention was called to some survey stakes on the property directly west of Lot 2. He called this information to his mother's attention, and she had a survey made in July 1962, which disclosed the encroachments by the plaintiffs.

Defendant called as a witness a party who had been a tenant on her property from 1943 to 1953. The testimony of this witness tended to corroborate in many particulars that of the plaintiffs. He testified to the improvements made on plaintiffs' property in 1945 and the installation of the window wells at that time. He remembered that the fence was a little to the north of the improvements, and that the picket fence was put in before he moved from the premises. He also recalled the planting of trees by the plaintiffs shortly after he moved onto Lot 1, as testified to by the plaintiffs.

The foregoing brief résumé of the pertinent evidence is sufficient to point up the problem herein. Defendant is the record title owner of the strip in question. The plaintiffs, who claim 2 feet of Lot 1 by adverse possession, have the burden to prove their allegations by a preponderance of the evidence. Fitch v. Slama, 177 Neb.

96, 128 N. W. 2d 377. The statutory period for the establishment of title to real estate by adverse possession in Nebraska is 10 years. § 25-202, R. R. S. 1943. The claim of title by adverse possession must be proved by actual, open, exclusive, and continuous possession under a claim of ownership for the statutory period of 10 years. The possession is sufficient if the land is used continuously for the purpose to which it may be in its nature adapted. Krimlofski v. Matters, 174 Neb. 774, 119 N. W. 2d 501.

Defendant concedes that as to the area actually occupied by the house and garage, the evidence sufficiently shows adverse possession. With reference to the area enclosed by the fence between the house and the garage, and the area occupied by the window wells, while defendant disputes the evidence, she recognizes that a conflict existed to be resolved by the trial court, and that conflict was resolved in favor of the plaintiffs. It is our considered judgment that the weight of the evidence preponderates in favor of the plaintiffs to establish the use of and adverse possession to the area enclosed by the fence and the window wells for more than the statutory period.

Defendant seriously argues, however, that, in any event, the court erred in extending the plaintiffs' north lot line 2 feet, or in effect transferring from the defendant to the plaintiffs an east to west strip continuous and straight, constituting the entire south 2 feet of Lot 1. Defendant contends that no sufficient evidence was adduced to show the use of portions of said area, particularly the area between the window wells, the area north of the garage and west of the fence, which is an area approximately 22 feet by 2 feet, and the area north of the lot line and east of the east window well to the east property line, which would be considered as a part of the front yard area and would be approximately 20 feet by 2 feet.

The law does not require that possession shall be evi-

denced by a complete enclosure nor by persons remaining continuously on the land and constantly performing acts of ownership thereon. Lantry v. Parker, 37 Neb. 353, 55 N. W. 962. What is sufficient to meet the requirements for actual possession depends upon the character of the land and all the circumstances of the case. Olson v. Fedde, 171 Neb. 704, 107 N. W. 2d 663.

The evidence is undisputed that previous to the erection of the present garage in 1942, one of the old buildings it replaced occupied the disputed 2-foot area north of the garage. The plaintiffs also testified to the maintenance of a drainage ditch in the area north of the garage, since the construction of the garage. It is also undisputed that a television ground is in the area north of the house. There is no question but that the eaves of the house overhang the window wells and the area claimed north of the house, and that this would at least give a prescriptive use for the purposes of the eaves. It is the plaintiffs' claim that they have always considered the sidewalk seam line to be the north boundary of Lot 2. This seam line is 2.07 feet north of Lot 2. The present action is to quiet title to only the north 2 feet, and the judgment entered by the trial court is so limited.

Possession is not established by merely showing an intention to possess, because the whole doctrine of title by adverse possession rests upon the acquiescence of the owner and the hostile acts and claims of the party in possession. As we said in Fitch v. Slama, 177 Neb. 96, 128 N. W. 2d 377: "Acts of dominion over land must, to be effective against a true owner, be so open, notorious, and hostile as to put an ordinarily prudent person on notice of the fact that his lands are in the adverse possession of another. A mere temporary use of property by a trespasser at intervals, whether remote or frequent, is not enough."

Is there in this record more than a mere temporary use of property by a trespasser sufficient to indicate a claim to the property? We believe there is. The evi-

dence of the plaintiffs is to the effect that they have always maintained their yard to the sidewalk seam line. They planted grass in the area involved, and put a lilac bush in the 2-foot area north and east of the house, which in 1949 they replaced by an evergreen tree. In 1957, when they remodeled the porch, they removed the evergreen tree and put a flower garden in part of the old porch area and the area occupied by the tree. It was the fencing of this area north and east of the house by the defendant which resulted in this action. We hold these acts to be sufficient to show an open, notorious, and hostile use of the area sufficient to put an ordinarily prudent person on notice of the fact that the area was in adverse possession of the plaintiffs.

It is true that there is a conflict in the evidence on the use of the disputed areas, particularly as respects the elements of exclusive use. We find, however, that the evidence is sufficient to sustain the plaintiffs' position. We also observe that while the law requires this court, in determining an appeal in an equity action involving questions of fact, to reach an independent conclusion without reference to the findings of the district court, this court will, in determining the weight of the evidence where there is an irreconcilable conflict therein on a material issue, consider the fact that the trial court observed the witnesses and their manner of testifying. Walkenhorst v. Apolius, 175 Neb. 583, 122 N. W. 2d 875.

Defendant puts considerable stress on the fact that plaintiffs did not realize they were encroaching on defendant's property until the survey disclosed the encroachments. The rule is well settled that if one, by mistake as to the boundary line, constructs upon and takes possession of the land of another, claiming it as his own to a definite and certain boundary by an actual, open, exclusive, and continuous possession thereof under such claim for 10 years or more, he acquires title there-

to by adverse possession. See Konop v. Knobel, 167 Neb. 318, 92 N. W. 2d 714.

The fact that one claiming title by adverse possession never intended to claim more land than is called for in his deed is not a controlling factor. It is the intent with which possession is held, rather than the intention to hold in accordance with the deed, that is controlling. The claim of adverse possession is founded upon the intent with which the occupant has held possession, and this intent is ordinarily determined by what he has done in respect thereto. See Vrana v. Stuart, 169 Neb. 430, 99 N. W. 2d 770.

Applying these rules, there can be little question herein. The house on Lot 2 was built in 1911 and 1912 approximately on the lot line, with the eaves extending approximately 2 feet north of the lot line. Improvements on the rear of the lot extended approximately 2 feet north of the lot line. This was the situation at the time the defendant acquired Lot 1. The improvements made by the plaintiffs subsequent to 1941 are consistent only with a belief and claim of ownership to this area. The seam line of the sidewalk would appear to the naked eye to be approximately 2 feet north of the plaintiffs' house, and in line with the north edge of the eaves and the gutters. The plaintiffs did not make the encroachments on the 2-foot strip because they claimed ownership only in those specific areas occupied by the improvements, but because they considered the lot line to extend 2 feet north of the house. It is also evident, although this fact is disputed by the testimony of the defendant and her son, that the actions of the parties would indicate that until the defendant's survey even the defendant considered the lot line to be approximately where the trial court placed it.

For the reasons given above, we find the evidence of the plaintiffs establishes a use showing actual, open, exclusive, and continuous possession of the south 2 feet of Lot 1 for more than the statutory period of 10 years.

It is, therefore, sufficient to sustain a claim of title by adverse possession. The trial court having arrived at a like conclusion, the judgment is affirmed.

AFFIRMED.