GEORGE N. CONVERSE ET AL., APPELLANTS, V. GUY E. KENYON ET AL., APPELLEES.

132 N. W. 2d 334

Filed January 8, 1965. No. 35796.

Robert V. Hoagland, for appellants.

Farman & Cassel, for appellees.

Heard before WHITE, C. J., CARTER, MESSMORE, BOS-LAUGH, and BROWER, JJ., and POLLOCK and SIDNER, District Judges.

BROWER, J.

George N. Converse, Berlea D. Converse, Grace C. Blake, Roy A. Blake, James P. Converse, and Helen M. Converse, the plaintiffs herein, brought this action in the district court for Brown County, Nebraska, against the defendants Guy E. Kenyon, Edna Kenyon, Herbert Kenyon, and Ruth Kenyon, to correctly establish the corners and boundaries of Section 4, Township 30 North, Range 23 West of the 6th P.M., in Brown County, Nebraska, under section 34-301, R. R. S. 1943.

George N. Converse, Grace C. Blake, and James P. Converse are the record owners of the southwest quarter of said section and will be designated as plaintiffs. The other plaintiffs are their spouses and have only marital

interests therein. Guy E. Kenyon is the record owner of the east half of said section and when the context relates to one defendant the reference is to him. Edna Kenyon is his wife and her interest is only as a spouse also. Herbert Kenyon, a son of Guy E. Kenyon, is in possession of defendant's land under lease from him. Ruth Kenyon is his wife. The tenant and his spouse were dismissed from the action.

Plaintiffs alleged that some of the boundaries of the section mentioned became lost or destroyed and are presently in dispute between the parties, and that the fence dividing the east half from the west half of the section in controversy had been moved to the west of the true half-section line by defendants or their predecessors in interest resulting in the taking of 20 acres of land off the plaintiffs' southwest quarter and enclosing it with the defendants' southeast quarter. They further alleged a true survey had been made, a copy of which was attached to the petition. Plaintiffs asked that the court determine the correct boundaries and require the defendants to conform thereto and move their fence accordingly.

The defendant Guy E. Kenyon answered alleging he was the sole owner of the east half of the section; denying that the plaintiffs were owners of that part of the southwest quarter of the section east of the north and south fence thereon; and alleging that the fence between the two tracts had been in the same location for more than 21 years and the defendant and his predecessors in title, having been in actual, open, notorious, continuous, exclusive, and hostile possession of that portion of the southwest quarter lying east of the fence, had acquired title thereto by adverse possession. The prayer was that his title thereto be quieted and confirmed as against the claims of the plaintiffs.

The plaintiffs' reply consisted of what may be considered a denial of new matter in the answer and further alleging the plaintiffs had paid the taxes on the

entire southwest quarter and the defendants by their further acts have in substance made a disclaimer of title and barred themselves by estoppel in pais from claiming title to any part of the southwest quarter of said section.

A trial to the court resulted in a finding for the defendants on the issue of adverse possession and a determination that the fence in question was the line between the plaintiffs' and defendants' property. The judgment quieted the title to that portion of the southwest quarter that lies east of the fence in question in the defendant Guy E. Kenyon.

Plaintiffs' motion for a new trial having been overruled, they have appealed the cause to this court.

There is little if any dispute in the actual facts disclosed by the evidence. By patent from the United States the southwest quarter of the section was conveyed to James P. Nelson, and was later conveyed to Edward M. Converse. On his death in or shortly prior to 1952, the plaintiffs derived title from his estate to an undivided portion of the premises. They thereafter procured the remaining interest by conveyances from the other heirs and are now the owners of the record title.

Plaintiffs George N. Converse and James P. Converse are residents of the State of Ohio and Grace C. Blake resides in Denver, Colorado. George N. Converse saw the land in 1952 but did not then inspect or take measurements concerning it. In 1959 and 1960 he was in Nebraska. From viewing aerial photographs he observed a discrepancy in size between the southwest and southeast quarters of the section as divided by the fence. Further checking at the courthouse disclosed a material variance in the areas of the two quarters. This information was conveyed to the Blakes at Denver.

Conferences were arranged and resulted at the home of Guy E. Kenyon who lived in Denver also. There were three of such meetings. Guy E. Kenyon and George N.

Converse and wife were present each time, and Grace C. Blake and husband on the last two occasions. The consultations were in regard to moving the fence and running it on the correct line, and also concerned a proposed sale of the plaintiffs' land to the defendant. After one such meeting the defendant Kenyon in February 1962, wrote to George N. Converse in Ohio, the substance of the letter being that he had decided to move the fence but could not say when since it would involve a mile of fencing at a cost of perhaps $1,000. It also stated that it would require considerable investigation with the county surveyor and commissioners. He wrote that as soon as time and finances would permit, he would do something about it and would contact Converse again.

In the summer of 1962 the plaintiffs employed a surveyor who reestablished the corners of the land in question from the records at the courthouse showing the official plat and field notes of the original survey of the government land office in 1874. It was determined that the area between the fence in question and the north and south half-section line to its east was 20 acres and that the fence was 5 chains, or 330 feet, to the west of the true line on the road at the south side of the southwest quarter. The strip of land between the fence and half-section line tapered, becoming narrow to the north, and leaving a pie-shaped triangular strip which is the concern of this litigation. At one of the conferences defendant informed the plaintiffs they could measure all they wanted and tie a rag on the south fence where they thought the line should be. At the subsequent meetings the negotiations for the defendant to buy the plaintiffs' land fell through and the defendant being informed of the survey having been made told plaintiffs there was no occasion for such an expense. He then said that if or when the fence was moved, he was the one who would determine where it was to be placed. The negotiations thereupon terminated and this action ensued.

· · The evidence shows the plaintiffs and their predecessors had previously always paid the taxes on what the treasurer's receipts described as the southwest quarter of the section. The amounts of taxes so paid for any year or period are not shown. The defendant Guy E. Kenyon and his predecessors had paid the taxes on the east half of the section as described in the treasurer's records.

The record contains the following evidence concerning the claim of adverse possession of the defendant Guy E. Kenyon. Kenyon was 65 years of age and was born on the northeast quarter of this section. The entire east half of the section was patented by his grandfather who deeded it to his father in and prior to the year 1900. He lived on it and helped his father until the latter's death in 1934. He took over farming it in that year and acquired the interest of the other heirs of his father in 1940. Thereafter he continuously farmed it until 1956 when it was leased to his son who as his tenant continued to occupy it until the trial. The north-south fence in question runs entirely across the section. It is in line with the fences across the roads on the north and south sides of the section. Kenyon always considered the fence to be on the correct boundary line between the east and west half of the section. It is the same fence that has existed there for as long as he could remember although it has been repaired from time to time. He considered everything east of this fence to be his. Since 1940 he or his tenant have been in continuous possession of all the land east of the fence and he has claimed it to be his as against all persons and the world. Defendant and his tenant planted the land east of the fence to various crops and harvested them during all of this time. Its occupancy was at all times visible to those who had dealings concerning the land or inquired about it. The land to the west of the fence had been farmed by others, apparently tenants of the plaintiffs or their predecessors. No one else had ever

made claim to the land east of the fence prior to the plaintiffs in 1961. Defendant had not supposed, however, that land in the southwest quarter lay east of the fence but had nevertheless claimed to own and had farmed up to the fence.

His son, Herbert Kenyon, testified he was 32 years of age and had lived on the east half of the section with his father until 1956 except for 4 years while he was in the military service. Since 1956 he has farmed it as tenant of his father. He testified substantially the same with respect to the fence and to his and his father's occupancy and use of the land during his remembrance.

Three other persons, residents of the vicinity for long periods, in corroboration of defendant and his son testified to the use of the land by the defendant and his father and of the knowledge of its use by the community. There is no evidence disputing the possession of the defendant and his predecessors.

The plaintiffs contend: The court erred in finding that the defendant had acquired title to the strip of land in controversy by adverse possession; the court erred in failing to establish the correct section line according to the prayer of the petition; the court's judgment is so indefinite that it is impossible for anyone to ascertain the exact limits and the extent of the land quieted in the defendant; and the court erred in failing to require the defendant to reimburse the plaintiffs for the taxes paid thereon with interest during defendant's occupancy of said strip of land since 1940.

In the recent case of Mentzer v. Dolen, *ante* p. 42, 131 N. W. 2d 671, the syllabi by this court held: "The claim of title by adverse possession must be proved by actual, open, exclusive, and continuous possession under a claim of ownership for the statutory period of 10 years.

"The possession is sufficient if the land is used continuously for the purpose to which it may be in its nature adapted. * * *

"What is sufficient to meet the requirements for actual

possession depends upon the character of the land and all of the circumstances of the case.

"Acts of dominion over land must, to be effective against a true owner, be so open, notorious, and hostile as to put an ordinarily prudent person on notice of the fact that his lands are in the adverse possession of another. * * *

"Where one, by mistake as to the boundary line, constructs upon and takes possession of land of another, claiming it as his own to a definite and certain boundary by an actual, open, exclusive, and continuous possession thereof under such claim for 10 years or more, he acquires title thereto by adverse possession.

"The fact that one claiming title by adverse possession never intended to claim more land than is called for in his deed is not a controlling factor. It is the intent with which possession is held, rather than the intention to hold in accordance with the deed, that is controlling. The claim of adverse possession is founded upon the intent with which the occupant has held possession, and this intent is ordinarily determined by what he has done in respect thereto." See, also, Purdum v. Sherman, 163 Neb. 889, 81 N. W. 2d 231, a strikingly similar case involving farmland.

In 3 Am. Jur. 2d, Adverse Possession, § 240, p. 339, it is said: "After the running of the statute, the adverse possessor has an indefeasible title which can only be divested by his conveyance of the land to another, or by a subsequent disseisin for the statutory limitation period. It cannot be lost by a mere abandonment, or by a cessation of occupancy, or by an expression of willingness to vacate the land, or by the acknowledgment or recognition of title in another, or by subsequent legislation, or by survey."

In Martin v. Martin, 76 Neb. 335, 107 N. W. 580, 124 Am. S. R. 815, this court held: "One who has acquired absolute title to land by adverse possession for the statutory period does not impair his title by thereafter pay-

ing rent to the owner of the paper title." In the opinion of the cited case it was stated: "The law is well settled that recognition of title in the former owner by one claiming adversely, after he has acquired a perfect title by adverse possession, will not divest him of title."

The plaintiffs in the first assignment of error contend the defendant had not acquired title to the land in question by adverse possession. They argue that adverse possession cannot be established unless the defendant knew that he was occupying the land which was not included in his deed and chain of title. This contention cannot be sustained. Mentzer v. Dolen, *supra*. Further, they stress the fact that the plaintiffs paid the taxes on the land in dispute and that the defendant did not, and this is claimed determinative of the issue of adverse possession. The payment of taxes is an element or circumstance which may be considered with all other circumstances of the case with respect to the subject of adverse possession. Wells v. Tietge, 143 Neb. 230, 9 N. W. 2d 180. It is not determinative of the issue. Under the authorities cited there was nothing in the negotiations between the parties that would divest defendant of title previously acquired by adverse possession. Martin v. Martin, *supra*. It is obvious that the evidence in this case under the rules set forth herein clearly establishes that the defendant has been in actual, open, notorious, continuous, exclusive, and hostile possession of the land lying between the fence and the east line of the southwest quarter of the section involved and has acquired title thereto by adverse possession. The assignment of error is without merit.

This action was brought under the provisions of section 34-301, R. R. S. 1943. The purpose of the proceeding is set forth in the beginning of the section. As applied to this action its purpose is to establish corners and boundaries which are in dispute and is brought against the owner of the other tract which would be affected by the determination. The last portion of this section

reads as follows: "Either the plaintiff or defendant may, by proper plea, put in issue the fact that certain alleged boundaries or corners are the true ones, or that such have been recognized and acquiesced in by the parties or their grantors for a period of ten consecutive years, which issue shall be tried before the district court under its equity jurisdiction without the intervention of a jury, and appeals from such proceedings shall be had and taken in conformity with the equity rules." The defendant placed in issue his ownership of the land by adverse possession pursuant to the provisions of this section. The section specifically provides for the determination of a line recognized and acquiesced in by the parties or their grantors for 10 years. When as here a different boundary is shown to have existed for the statutory period, it is that boundary line that is to be determined between the disputed owners and not that of the original survey. There is no error in the trial court's judgment in this respect.

The plaintiffs argue that the description in the judgment is so indefinite that the limits and extent of the land quieted in the defendant are impossible of ascertainment. In Hallowell v. Borchers, 150 Neb. 322, 34 N. W. 2d 404, it is said: "The bulk of the Nebraska cases involve disputed boundaries, and in most of these cases the land claimed by the adverse possessor was enclosed by him or occupied by him up to a fixed monument, such as a road or a ditch." In 12 Am. Jur. 2d, Boundaries, § 4, p. 549, it is stated in part: "A 'monument,' when used in describing land, has been defined as any physical object on the ground which helps to establish the location of the line called for, and the term 'monument,' when used with reference to boundaries, indicates a permanent object which may be either a natural or an artificial one." Examples of artificial monuments are set forth in the same section and among them it is stated that an established fence may be such a monument. The evidence clearly shows the fence marked the boundary in this

case for many years. Indeed no other boundary could be established under the circumstances. The trial court committed no error in so doing.

The plaintiffs assign as error the failure of the court to require the defendants to reimburse plaintiffs for taxes paid. In support of this argument they cite in their brief section 76-301, R. R. S. 1943. The plaintiffs' petition contained no reference to taxes paid and asked no refunding of such taxes. The plaintiffs' reply to the defendants' answer did assert that plaintiffs had paid the taxes and the defendants and their predecessors had not, but nothing is said there as to the amount paid nor concerning reimbursement. It is apparent these allegations were made to refute the claim of adverse possession by the defendant in his answer. Although the evidence shows the taxes were paid by the plaintiffs on the land in dispute, there is a complete lack of evidence as to the amount of any such payments. If the plaintiffs sought a refund for taxes expended, the burden was upon them to plead and prove that issue. No claim of error was made in the motion for new trial because of the court's failure to order repayment of taxes paid. It appears to be asserted for the first time in this court. The plaintiffs' contention is without merit.

The judgment of the trial court in quieting title of the land in question in the defendant was proper and should be and is affirmed.

AFFIRMED.