MARY R. CUNNINGHAM ET AL., APPELLANTS AND CROSS-APPELLEES, v. OTHO L. STICE ET AL., APPELLEES AND CROSS-APPELLANTS, THOMAS BURTON ET AL., APPELLEES AND CROSS-APPELLEES.

147 N. W. 2d 921

Filed January 27, 1967. No. 36371.

Bayard T. Clark and Herman Ginsburg, for appellants.

Archibald J. Weaver, for appellees Stice et al.

Wiltse, Wiltse & Lantzy, for appellees Burton et al.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, SMITH, and McCOWN, JJ., and LYNCH, District Judge.

CARTER, J.

The plaintiffs brought this action to determine the north line of their property which they contend is the south quarter line of Sections 4 and 5, Township 1 North, Range 18 East of the 6th P.M., in Richardson County, Nebraska. The defendants Stice are the owners of the land immediately north of plaintiffs' lands in Section 4 and the defendants Burton are the owners of the land immediately north of plaintiffs' lands in Section 5. The issue in the case is the location of the common boundary line between the plaintiffs on the one hand and the defendants Stice and Burton on the other. The plaintiffs contend that the boundary line is the south quarter line in Sections 4 and 5 according to the United States government survey as shown by exhibit 3 in the record. The defendants contend that the boundary line is the south quarter line in Sections 4 and 5 according to the Relf survey as determined and filed in the county surveyor's office in Richardson County on May 21, 1913. The trial court found that the fence constructed by S. W. Cunning-

ham on the line of the Relf survey was the correct line under the evidence and it quieted the title to the lands of the respective parties north and south of the fence constructed on the Relf survey line.

The plaintiffs are the daughters of S. W. Cunningham from whom they inherited the lands to which they now assert ownership. In 1913, S. W. Cunningham caused J. Frank Relf to make a survey for the purpose of establishing the north line of his land. Thereafter he established a fence on the line established by Relf. In 1958, a new fence was built by the defendant landowners on the approximate line of the old fence. In January 1965, plaintiffs employed Willis L. Brown to make a survey establishing the north line of their lands. In so doing, he found original corners and established the line in accordance with the original government survey which is some distance north of the fence erected on the line established by Relf. It is the land between the lines established by Brown and Relf that is in dispute in this litigation.

The point of beginning of both surveys was the south quarter corner on the west line of Section 5. From this point east, the first half mile is described as high ground farmlands. The land then drops down over the Missouri River bluffs to bottom lands which extend to the west bank of the present location of the Missouri River. These bottom lands were covered with timber and brush until some clearing thereof has been done in recent years. In 1938, the course of the Missouri River was changed by the U. S. Army Corps of Engineers so that it now runs approximately along the east line of Section 5, the Burton land lying immediately to the west thereof. The Stice land lies to the east of the Missouri River and extends to the chute where the Missouri River formerly ran. The Stice land is bottom land as hereinbefore described.

Frank Norris, the county surveyor of Richardson County, completed a retracing of the Relf survey which

was completed the day before the commencement of the trial. The records of his office do not show a survey plat. His retracement was based on Relf's field notes on file in the office. In making the retracement survey, no stakes were found, but two limestone corner markers were found which he assumed were set by Relf in his 1913 survey. Norris testified that he accepted the two limestone markers and projected the line east across the present channel of the Missouri River to the old chute of the Missouri River. The evidence of old fences were found on the ground which were south of his line. Norris states that the fence on the Burton land for a distance of 600 to 800 feet was 7 feet south of the south quarter line which he reestablished, at which point it became contiguous with the survey line. A quarter of a mile east of the west line of Section 5, the fence was about 2 feet south of the surveyed line. In going on east down the hill the survey line was followed but at the base of the hill the corner was 6 feet south. The conclusion of Norris is that the new fence is "pretty much" on the east and west line of the Relf surveyed line.

It is evident that the Relf survey does not coincide with the survey of Brown based on the government corners which he found. The reason for the difference is not too important under the circumstances of this case. The evidence shows that S. W. Cunningham caused the Relf survey to be made about 1913 for the purpose of determining the line on which to build the original line fence. He built the fence on the line so established and the parties have treated it as the south quarter line in Sections 4 and 5 since and until the present litigation arose. S. W. Cunningham kept this fence in repair until 1950, after which it was allowed to deteriorate.

There is evidence in the record regarding the location of a well on Section 5 and its distance from the original fence. Plaintiffs and others testify that the well was about 35 feet north of the original fence line. The evidence shows that it is now about 90 feet north of the

new fence built on the line of the old one. There is evidence by a former owner that he moved this well 15 or 20 feet north in order to obtain an adequate supply of water. While this evidence does not account for the difference of 40 feet in the estimated distance, it raises a question of credibility which the trial court was in the better position to determine.

The Burton land was owned by Richard Majerus from 1950 to 1959. He found the original fence along the south boundary. Majerus sold the land to Joseph Strecker in 1959. Strecker established the original south fence as a boundary at the time of his purchase. He did not repair the fence during his ownership of the land nor was it moved up to the time he sold the land to Burton. Burton rebuilt the fence in the winter of 1964-1965 on the line or a little north of the line of the old fence.

The Stice land was bottom land lying between the Missouri River as it was located after 1938 and its old riverbed. It was inaccessible except by boat for many years and until the old riverbed filled in. He claims beyond the line of the old fence, much of which was washed out in the flood of 1952. Stice began clearing the land after his purchase of it and built a new fence south of the line of the Relf survey as retraced by Norris.

Plaintiffs testify that the fence began at the south quarter corner in the west line of Section 5 and went straight east to the Missouri River, which line was 35 feet south of the well previously described. The evidence shows that S. W. Cunningham caused Relf to survey his north line for the very purpose of determining where to build his north line fence. He built his fence on that line and for more than 50 years it was generally considered as the boundary between the lands of plaintiffs and defendants. The evidence of old fencing on the line of the Relf survey sustains a finding that the new fence was substantially on the line of the Relf survey. There is evidence of occupancy and use of the lands by the parties to the old fence, although the evidence of physi-

cal use is fragmentary due to the nature of the land. But it seems important in a consideration of the case that plaintiffs' father, S. W. Cunningham, caused the Relf survey to be made, that he built and maintained a fence thereon for many years, and that all parties to the litigation considered the Relf survey line to be the boundary line except the plaintiffs who claim under the original government survey. With the establishment of the Relf survey line and the evidence of the building of the original and new fences on that line, it appears conclusive to us that it has become the boundary line between the plaintiffs' lands and those of the defendants.

In a case very similar on its facts, this court said: "Where one, by mistake as to the boundary line, constructs upon and takes possession of land of another, claiming it as his own to a definite and certain boundary by an actual, open, exclusive, and continuous possession thereof under such claim for 10 years or more, he acquires title thereto by adverse possession." Converse v. Kenyon, 178 Neb. 151, 132 N. W. 2d 334. See, also, Mentzer v. Dolen, 178 Neb. 42, 131 N. W. 2d 671; Purdum v. Sherman, 163 Neb. 889, 81 N. W. 2d 331.

The sufficiency of the possession in an action of this kind depends upon the character of the land and the use that can reasonably be made of it. The possession is sufficient if the land is used continuously for the purpose to which it is adapted because of its nature and character. The acts of dominion over land of the title owner, to be effective against him, must be so open, exclusive, and continuous as to put an ordinarily prudent person on notice that his lands are in the adverse possession of another. Converse v. Kenyon, *supra*. The evidence in this case shows that the possession was continuous and for the purpose for which adapted for a period in excess of 10 years. This meets the requirements as to proof in such cases. Mentzer v. Dolen, *supra*.

The defendants Stice have cross-appealed. These de-

fendants contend that they obtained title to lands south of the Relf survey line in Section 4 by adverse possession prior to 1938, after which year the land became inaccessible because of the change in the riverbed of the Missouri River. The evidence does not adequately show the adverse possession of the lands south of the Relf survey line extended east to permit the tacking of their alleged adverse possession to that of these defendants. It is quite evident that the former owners claimed only to the boundary line fixed by the Relf survey and the evidence does not show a hostile possession of lands south of that line.

The trial court having come to these same conclusions the judgment of the district court is affirmed.

AFFIRMED.