HENRY S. HAMMERLY, APPELLANT, v. COUNTY OF DODGE, STATE OF NEBRASKA, ET AL., APPELLEES, LAVERLE MOREHOUSE ET AL., INTERVENERS-APPELLEES.

185 N. W. 2d 452

Filed March 26, 1971. No. 37535.

Edward J. Robins, for appellant.

Richard L. Kuhlman, for appellees.

Sidner, Svoboda & Schilke, for interveners-appellees.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, SMITH, McCOWN, and NEWTON, JJ.

WHITE, C. J.

The plaintiff appeals from a decree in the district court

for Dodge County denying a writ of mandamus and quieting title to the real estate involved in the interveners herein.

The action was commenced to require Dodge County to lay out two roads through separate properties. The county, by its answer, denied the ownership of the land in question but took the position that it was willing to act and construct the access road when ownership of the property was determined by final judicial order.

LaVerle Morehouse, Richard C. Morehouse, Barbara Cook Campbell, and John D. Cook (hereinafter referred to as Morehouse) and the executors of the Leonora P. Smith estate intervened in denying Hammerly's ownership of the land in question and asking that title be quieted in them. Although the petition prayed for a writ of mandamus, with the intervention of the purported adverse owners, the issue was finally joined the same as in a quiet title action turning on the issue of adverse possession.

For illustrative purposes only, a chart based on exhibits 1 and 2 is included in this opinion so a clear picture of the issue involved can be grasped. The Elkhorn River runs through the property.

The evidence shows that plaintiff Hammerly bought the west half of the southeast quarter (except a strip of land 33 feet wide on each side of a ditch located across the southwest quarter of the southeast quarter and a small strip of land which had been conveyed to the State of Nebraska). Crossing the river to the north and to the west, the interveners are the owners and in possession of the northwest quarter; the southwest quarter of the northeast quarter; the north half of the southwest quarter; and the south half of the southwest quarter; all of the land is located in Section 7, Township 18 North, Range 9 East, Dodge County, Nebraska. The interveners claim that part of the northwest quarter of the southeast quarter and that part of the southwest quarter of the southeast quarter lying west of the Elkhorn

Section 7, Township 18 North, Range 9 East of the 6th P.M.

MOREHOUSE
NW ¼

MOREHOUSE
SW ¼ NE ¼

MOREHOUSE
N ½ SW ¼

SMITH
S ½ SW ¼

HAMMERLY
W ½ SE ¼

ELKHORN RIVER

N

KEY

— — — — = Banks of Elkhorn River from 1941 Photo

—.— — —.— = Banks of Elkhorn River from 1955 Photo

= Land occupied & claimed by Morehouse since 1920

= Land accreted to Morehouse & land claimed by Morehouse

= Land accreted to Smith

River and immediately adjacent to the property to which they have record title. The chart identifies this as the property immediately to the north and to the west of the stream of the Elkhorn River.

Legal title to the Morehouse land had been in a trust for the Morehouse family from 1921 to 1955. With the termination of the trust in 1955, the title to the Morehouse property vested in Joseph Morehouse, Richard Morehouse, and Gene Cook. After 1955 Gene Cook and Joseph Morehouse died and their shares vested in their heirs who appear as interveners in this action and are referred to generally as Morehouse.

The title to the south half of the southwest quarter of Section 7 was in Leonora P. Smith from 1931 to the date of her death in 1967 and since that date has been in the estate of Leonora P. Smith. This land is referred to as the Smith land.

There is some confusion about ownership of the various lands because of the fact that over 20 years ago the so-called Hammerly land was owned by the Dave Herman estate and Joseph Morehouse was married to LaVerle Herman Morehouse. In 1947 LaVerle Morehouse and husband, Joe Morehouse, conveyed this Hammerly 80 to her brother, Clairmont J. Herman, who in turn sold this 80 to Lee Johnson in 1951. Lee Johnson sold this 80 to the plaintiff in 1964.

The Elkhorn River forms a natural boundary between the west half of the southeast quarter (record title to which is in the name of Henry Hammerly) and the Morehouse land which is in the north half of the southwest quarter and the Smith land which was the south half of the southwest quarter. The record in this case shows that through the years the Elkhorn River has been gradually moving east and that the land in dispute has accreted to the property on the west bank of the river.

This is an equity case and we try it de novo. The basic issue in the case is whether the property has been

acquired by adverse possession by the interveners. A third and collateral contention in the case is that there was error in the manner in which the trial court viewed the premises involved in this dispute. The evidence shows, mainly adduced by Hammerly, that there is considerable difficulty in determining one's location and bearings on the property, and it is peculiarly important that an inspection be made visually because of the Elkhorn River cutting through the property. It is clear that under the evidence introduced by Hammerly himself the trial judge acted well within his discretion and did not abuse it in viewing the premises. See, Ricenbaw v. Kraus, 157 Neb. 723, 61 N. W. 2d 350.

The main thrust of the appeal, of course, is simply that the decree is contrary to and not supported by the law or evidence and that the interveners have not established their title under the law of adverse possession. The claim of adverse possession must be proved by actual, open, exclusive, and continuous possession under claim of ownership for the statutory period of 10 years. Foos v. Reuter, 180 Neb. 301, 142 N. W. 2d 552; Mentzer v. Dolan, 178 Neb. 42, 131 N. W. 2d 671. It should be noted, as we did in the recent case of McCain v. Cook, 184 Neb. 147, 165 N. W. 2d 734, that this case involves a boundary dispute turning on the overlapping questions of adverse possession and the claimed mutual recognition of a boundary line fence between the properties for the statutory period of 10 years. See, also, Cunningham v. Stice, 181 Neb. 299, 147 N. W. 2d 921.

While the instant case does not involve the erection of a fence and the subsequent mutual recognition of such fence as a boundary line between two properties, the concept of mutual recognition of the natural barrier, the Elkhorn River, is identical. The evidence in this case shows that the mutual acquiescence of the parties of the Elkhorn River as being a boundary line coupled with the exclusive exercise of dominion over the land west of the Elkhorn River by the Morehouses

and Smiths is fatal to the claims of the record title holder Hammerly.

The record is clear that none of the predecessors in title to the Hammerly land on the west side of the Elkhorn ever exercised any control or dominion over it. The deposition of Lee Johnson, deceased, was introduced by the interveners. Johnson owned the land which includes record title to the disputed premises from 1951 to 1964 when it was conveyed to Hammerly. Johnson testified that he never went across the Elkhorn to the land west of the river parallel to his estate, this was even though he thought he might own some of that land.

Moreover, Arthur Sidner, an attorney actively managing the Morehouse lands as trustee from 1944 to 1955, testified that he gave permission to certain people to fish and hunt on the disputed land. At different times when he was upon the land he observed fences which the tenants had constructed on the land to allow the pasturing of cattle, and he observed that a small strip of the land was actually under cultivation. Prior to Arthur Sidner's management of the land his father had performed the same service. Recalling his long association with the property of the interveners and their exercise of control over all land west of the Elkhorn he testified: "The tenants that I have known and I will have to go back to about the late 1930's exercised complete domination and possession and use of the land which has been marked in dispute. From that time on until today." Sidner also testified as follows: "Q- With respect to your handling of this and management and control of the land, what was the boundary with respect to this area—you have already said it— A- The Elkhorn River was the east boundary as far as either the Smith or Morehouse land was concerned."

In the trial there appears some dispute as to the kind of dominion exercised by the interveners. It is hinted that they never realized they were on land which was not theirs by deed. It is settled in Nebraska that: "The

fact that one claiming title by adverse possession never intended to claim more land than is called for in his deed is not a controlling factor." Converse v. Kenyon, 178 Neb. 151, 132 N. W. 2d 334.

It is the fact that the interveners did exercise exclusive possession which is controlling and not their desire to hold in accordance with their deed. Furthermore although the interveners did not cultivate all the ground west of the Elkhorn, they exercised control commensurate with the nature of the land. "The sufficiency of the possession in an action of this kind depends upon the character of the land and the use that can reasonably be made of it. The possession is sufficient if the land is used continuously for the purpose to which it is adapted because of its nature and character. The acts of dominion over land of the title owner, to be effective against him, must be so open, exclusive, and continuous as to put an ordinarily prudent person on notice that his lands are in adverse possession of another." Cunningham v. Stice, *supra*.

Hammerly has raised in his brief, without assigning as error, the relationship of Arthur Sidner as trustee for the Morehouse property and as attorney for one of the predecessors in title to the Hammerly land. It is sufficient answer that Sidner's last connection with the Hammerly property was in 1950, many years prior to a date which would invalidate the running of the 10-year period required for adverse possession and arguably after the predecessors in title to the Hammerly land had lost any claim they had to the disputed land. As we have demonstrated, the interveners have acquired title to the disputed land west of the Elkhorn either by adverse possession or mutual boundary acquiescence or both.

The judgment of the district court quieting title in the interveners is affirmed.

AFFIRMED.