Opal L. Elsasser, appellant, v. William A. Szymanski et al., appellees.

77 N. W. 2d 815

Filed July 6, 1956. No. 33966.

*A. W. Elsasser*, for appellant.

*Martin A. Cannon*, for appellees.

Heard before Simmons, C. J., Carter, Messmore, Yeager, Chappell, Wenke, and Boslaugh, JJ.

Wenke, J.

Opal L. Elsasser brought this action in the district court for Douglas County against William A. Szymanski and Elizabeth L. Szymanski. The purpose of the action is to have judicially determined the boundary line between the parties' adjoining properties located in Omaha. The relief sought is a mandatory injunction to compel

defendants to remove any and all structures and encroachments which they have placed across the parties' boundary line and on plaintiff's property and to permanently enjoin them from again doing so. Plaintiff also asks for damages which she claims she suffered by reason thereof. Trial was had. After plaintiff had adduced her evidence the trial court sustained defendants' motion to dismiss her action, and did so. Plaintiff's motion for new trial having been overruled, she perfected this appeal therefrom.

The parties agree, in view of the trial court's ruling, that in considering the record this court will apply thereto the following principle: "The plaintiff, as against a motion for a directed verdict, is entitled to have every controverted fact resolved in his favor and to the benefit of every inference that can reasonably be deduced from the evidence." Koutsky v. Bowman, 157 Neb. 919, 62 N. W. 2d 114. However, in an action of this character, appellant must recover upon the strength of his own title, not upon the weakness of his adversary. Knight v. Denman, 64 Neb. 814, 90 N. W. 863.

The record shows that in October 1927 appellant became the owner of the south 43.85 feet of Lot 55, Rees Place, an addition to the city of Omaha. These premises she has ever since occupied with her family as their home. Located thereon is a house and a three-car garage, the driveway to the garage running along the north edge of the property from Twenty-eighth Street east. The garage is located on the northeast part of the property.

Defendants, in October 1944, became the owners of the property located immediately to the north of appellant's property. It is described as the north 21.92 feet of Lot 55 and south 21.92 feet of Lot 56, Rees Place, an addition to the city of Omaha. On this property is located a duplex in which appellees make their home.

The lots are approximately 140 feet in depth from west to east and face west on Twenty-eighth Street. The

duplex on appellees' property is located 4 feet north of their south lot line and immediately to the south of the duplex was a 3 foot 6 inch cement sidewalk. In April 1953 appellees put in a fence along the boundary line from a point about in line with the east side of appellant's house and extending east 71.7 feet to within about 12.5 feet of the back of their property. This fence consists of a cement base in which are set steel posts, the fence being woven wire. Later, in October 1953, appellees widened the sidewalk south of their duplex some 5 to 6 inches. Appellant contends both of these improvements encroach on her property and interfere with her rights, especially the use of her driveway just north of her home. In connection with widening the sidewalk appellees removed a section of fence, about 9 feet 6 inches in length, from a post supporting an archway located across the sidewalk at the southwest corner of their duplex. Because of the sidewalk being widened appellant contends this was also in violation of her rights. We will discuss the factual situation in more detail as we deal with the several contentions appellant makes.

While this is an action primarily for the purpose of establishing a boundary line under section 34-301, R. R. S. 1943, we have said of this statute that it: "* * * is broad enough to, and does, authorize action in equity to determine boundaries of real estate, the ownership of which is in whole or in part in dispute." McGowan v. Neimann, 139 Neb. 639, 298 N. W. 411.

Although appellant testified she and her family have never occupied more than to their lot lines and only want to occupy the land they own, the fact is, particularly in relation to the driveway as it passes between the houses, she herein claims more than to her lot line by virtue of adverse possession. In regard to this claim we have said: "The plea of title to land by adverse possession must be proved by actual, open, exclusive and adverse possession under claim of ownership for the full

statutory period of ten years." McGowan v. Neimann, 144 Neb. 652, 14 N. W. 2d 326.

"The possession must not only have been actual, open, and continuous, but it must have been accompanied by an intention on his part to hold the land as the owner of it. It must have been under a claim of ownership." Colvin v. Republican Valley Land Assn., 23 Neb. 75, 36 N. W. 361, 8 Am. S. R. 114. See, also, Knight v. Denman, *supra*.

The most that can be said of appellant's testimony in this regard is that occasionally the wheels of cars and trucks using her driveway would get onto the area between the south edge of appellees' sidewalk and their lot line. We do not think adverse possession can be based on such occasional acts of trespass. Knight v. Denman, *supra*.

Appellant contends, because the original sidewalk south of the duplex was only constructed 3 feet 6 inches wide when, in 1922, it was put in by the original owners of both properties, Benson and Carmichael, and then left in that condition until October 1953, that there has been a recognition of and acquiescence in her ownership of 5 to 6 inches south of this sidewalk to the boundary line. See McGowan v. Neimann, 144 Neb. 652, 14 N. W. 2d 326. We do not think an owner of property recognizes and acquiesces in the ownership by his neighbor of any part of his property merely because, in constructing a sidewalk near the edge of his property, he does not extend it to his property line. An owner of real property can put a sidewalk on his land wherever he pleases and by doing so does not thereby recognize a relinquishment to his ownership of any part of the property outside thereof.

On the west 27.9 feet of the boundary line appellant had built a white picket fence. This was done in 1939. The east end of this fence had been nailed to a post on appellees' land. The post was the outer support of an archway built over the sidewalk south of the duplex

at the southeast corner thereof. The outer edge of this post is on the property line. In October 1953 appellees unfastened this fence from the post and, by extending the sidewalk out to the property line, made it impossible to refasten the fence to the post in the identical manner in which it had been. In this respect appellant claims an easement which she had has been interfered with. We have defined an easement as follows: "An easement is usually defined as a right in the owner of one parcel of land, by reason of such ownership, to use the land of another for a special purpose not inconsistent with the general property right of the owner." Paloucek v. Adams, 153 Neb. 744, 45 N. W. 2d 895.

In regard to an easement we have said: "A trial court may determine the extent of an easement arising by prescription in an injunction action and restrain interference with rights found to exist by virtue of the findings so made." Paloucek v. Adams, *supra.*

While appellant can maintain this fence on her property we do not think, by what had been done, she could require appellees to forever refrain from making any changes on their property. In other words, she could not compel appellees to keep this post available in an identical status merely so she could keep this fence fastened thereto.

Appellant contends the fence built by appellees interferes with what has been the drain of waters toward the rear of these properties. The evidence shows this drainage is surface waters. See Courter v. Maloley, 152 Neb. 476, 41 N. W. 2d 732.

Of surface waters we have said: "In this jurisdiction it is a general rule that surface waters may be controlled by the owner of the land on which they fall, or originate, or over which they flow and he may refuse to receive any that falls, or originates, or flows on or over adjoining land. His right in this respect however must be so exercised as not to unnecessarily or negligently cause injury to the rights and property of

others. Jorgenson v. Stephens, 143 Neb. 528, 10 N. W. 2d 337; Snyder v. Platte Valley Public Power and Irrigation District, supra (144 Neb. 308, 13 N. W. 2d 160, 160 A. L. R. 1154)." Courter v. Maloley, *supra.*.

Also that: "As to surface waters he may set up works so as to prevent their entry upon his land provided that he is free from negligence in the construction of the works even though damage to an adjoining landowner may be an incident thereof." Courter v. Maloley, *supra.*

And an easement for the flow thereof cannot be obtained by prescription. Courter v. Maloley, *supra.* Consequently appellees had a right to do what they did, even though it affected the flow of this surface water, as long as what they did was on their own land and not negligently done.

We come then to the actual boundary line itself. If the survey made by Ostrom for the appellees is correct, then none of the things done by appellees extend over onto appellant's property. However, if the survey made by Thomas for appellant is correct then the cement base of the fence at its west end extends 1.2 inches onto appellant's property and at the east end 3.6 inches. If this is true, and appellant has established it, then, of course, she is entitled to an order requiring appellees to remove the fence to the extent it encroaches on her property.

Rees Place addition was originally surveyed and platted in 1882. It consisted of 8 lots numbered 53 to 60. Each lot was 66 feet wide and 140 feet in length. They faced west on Twenty-eighth Street. The area between Twenty-seventh and Twenty-eighth Streets was apparently a ravine or draw some 30 feet in depth. Nothing was done with this property until 1922 when it was all owned by Benson and Carmichael. They had it resurveyed by Meuntefering but because some of the area had been filled in and due to the passage of time none of the stakes set out at the time of the original

survey in 1882 could be found. Consequently Meuntefering had to make a resurvey and set out new stakes.

Benson and Carmichael decided to develop the addition. In doing so they increased the number of lots from 8 to 12, although they retained the old numbers. Stakes were set out to mark the corners of the new lots. The amount of ground in the addition was found to be slightly deficient as compared to what was shown on the original plot so the new lots were established at a width of 43.84 feet at the west end on Twenty-eighth Street and 43.87 feet on the east end or at the alley. These lots were improved by Benson and Carmichael and then sold on the basis of the resurvey. The foregoing is the background for the description contained in both appellees' and appellant's deeds.

Both Ostrom and Thomas tried to perpetuate Meuntefering's resurvey accepting that as what should be used. They both found the stake at the west property line but neither could find the one at the back or east property line. Consequently both set new stakes and these are 6 inches apart and give rise to the difficulties here. Ostrom's stake, which was set 6 inches south of that subsequently set by Thomas, was used by appellees. According to it everything appellees did was constructed on their property. However, according to the Thomas resurvey the base of the fence made the encroachments already referred to.

Thomas testified they did the best they could but admitted there could be error in the resurvey he made as no one making a resurvey can be sure of exactly relocating the original markings; that such a resurvey could, depending upon the conditions under which it was made, be off as much as 3 inches; and that it is difficult to relocate such a corner, therefore he could not be positive whether his or Ostrom's resurvey is correct. Since appellant must depend upon the strength of her claim we do not think she has made a case. There is another significant fact appearing on the survey plat

made by Thomas. If Ostrom's survey is correct then the duplex on appellees' property was originally constructed square with the south property line, if Thomas' survey is correct, it was not. Taking the evidence adduced by the appellant to establish the boundary line in its best light we do not think it establishes the survey of Ostrom to be wrong and that of Thomas right, nor do we think it establishes any encroachment by appellees on the appellant's property by reason of the improvements they made.

Having come to the foregoing conclusions we affirm the action of the trial court.

AFFIRMED.