JOHN E. OLIVER ET AL., APPELLEES, v. NED THOMAS, SR., ET AL., APPELLANTS.

112 N. W. 2d 525

Filed December 22, 1961.   No. 35027.

*Atkins & Ferguson* and *Clark G. Nichols,* for appellants.

*Robert J. Bulger,* for appellees.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, SPENCER, BOSLAUGH, and BROWER, JJ.

YEAGER, J.

This is an action instituted by John E. Oliver, Robert L. Schmidt and Iris M. Schmidt, husband and wife, and L. Grace Oliver, plaintiffs, against Ned Thomas, Sr., Hazel M. Thomas, Ray Burden, Virgil Plummer, Leo Little, Jacob C. Zitterkopf, Claude Thomas, The Federal Land Bank of Omaha, a corporation, Pan American Petroleum Corporation, George A. Morris, and David J. Pickard, defendants, to quiet title in plaintiffs to certain real estate in Morrill County, Nebraska. The area involved is not particularly described in the pleadings or elsewhere in the record. It is however between land to the north owned by Ned Thomas, Sr., and land to the south owned by John E. Oliver. All of it except a very narrow strip along the north side is between the present north and south banks of the North Platte River. These plaintiffs claimed the right to have title quieted on the basis of adverse possession.

John E. Oliver claims to be the owner of the area in controversy. Robert L. Schmidt and Iris M. Schmidt assert an interest by reason of a contract of purchase. Presumably L. Grace Oliver is the wife of John E. Oliver. The rights of all other parties plaintiff depend upon what the adjudication shall be as to the plaintiff John E. Oliver, hence when the term plaintiff is used the reference will apply to all parties plaintiff unless separate reference is indicated.

The defendant Ned Thomas, Sr., who was the owner of the immediately adjacent land to the north, denied that the plaintiff was entitled to have title quieted in him, and by cross-petition asserted that he was entitled to have title quieted in him for the reason that the area was accretion to his adjacent land.

Of the other named parties, defendant Pan American

Petroleum Corporation was dismissed as a party defendant and is not a party to the proceeding. The rights of the others depend upon the adjudication as to the defendant Ned Thomas, Sr., hence when the term defendant is used the reference will apply to all parties defendant unless separate reference is indicated.

The questions for determination in the case are contained in the following pretrial order: "That the issues in this case be limited to whether or not the plaintiff owns the land and river lying south of the fence described in plaintiff's petition by adverse possession or the defendant Ned Thomas owns some portion of the area lying south of the fence either by adverse possession or on the basis of a shift of the river boundary line by accretion."

A trial was had and judgment was rendered in favor of plaintiff quieting title to the area described in the decree. Title was quieted in the defendant to a described area, but this is of no consequence since no party in this action has made a claim against it adverse to the title of the defendant. This was not an issuable matter on the trial.

A motion for new trial was duly made by the defendant. This motion was overruled. From the judgment and the order overruling the motion for new trial the defendant has appealed.

As grounds for reversal the defendant has set forth numerous assignments of error. The first of these is in substance that the evidence of the plaintiff was insufficient to sustain a judgment in his favor on his pleaded cause of action. This one will be considered first.

In order to arrive at any conclusion it becomes necessary to indicate as clearly as the record will permit the location of the area involved. This may be done only by reference to other property owned by the plaintiff and by the defendant. This cannot be done with any degree of accuracy on the evidence in the record. It is not described by metes and bounds or any kind of

survey; it is not described by monuments within the area or adjacent to it; and it is not described by distances from established monuments farther away. The defendant has described the land in question in his pleadings as the area south of the present fence bounded on the west by extending south at right angles with the centerline of the North Platte River as it existed in 1877 a line 1,392 feet west of the east line of Lot 5 a distance of 500 feet and on the east by extending the east line of Lot 5 south at right angles with the centerline of the North Platte River a distance of 650 feet and on the south by a line connecting the two extended lines. The exact geographical location of none of the named points or lines can be identified. This represented the total area claimed by the defendant in his pleadings and on the trial.

The court by its judgment quieted title in the plaintiff to an area described therein as "all real estate lying south of the fence line A-B-C-D as shown on the plat attached hereto and hereby made a part hereof." This plat is a copy of the exhibit elsewhere referred to in this opinion. The area to which title was quieted includes the area which the defendant says he is entitled to in his pleadings as well as the area south to the south bank of the river.

The parties have placed in the record an exhibit which discloses authentic information with reference to land a considerable distance to the north of this area and also to the south, but none as to this area going back of the year 1958. It is true that lines appear on the exhibit but the testimony does not, within the legal sense, establish true location. By lines placed upon the exhibit by the witness who made and identified it, it appears that the north bank of the North Platte River was near the north line of the area involved and a short distance north was a fence which had been maintained at this location since 1932. There is evidence that a fence was maintained at this location prior to 1932, but since plaintiff's

cause of action depends upon possession from that date forward it does not appear to require discussion as to earlier dates. The exhibit on its face indicates that by a survey made in 1877 this area was a part of the riverbed at that time, which riverbed extended a great distance north, and south generally to the present south bank of the river. The lines do not exactly coincide but they are at no point far apart.

It is obvious that the location of the north bank of the riverbed had moved south by 1932 since the north bank was near the north line of the area involved in 1932. The present south bank, according to the exhibit, is well to the south of this area. The only inference which the record contains is that the area between these two banks is within the present bed of the North Platte River, that the north bank of the river is in about the same location as it was in 1932, and that the area involved in this litigation is in the northern portion of the riverbed.

There is no complete description of the topography of this or any other portion of the riverbed at this time or since 1932. There is evidence that during the months after the close of the irrigation season it is for the most part covered with water, and that during the other months water for the most part disappears from the surface leaving channels, not clearly defined or described, for the flow of water. There is an island, not clearly described as to area, the size of which has not remained the same over the years. There are channels to the north and south of this island. There is evidence of other islands and sandbars but they are not located or identified.

Outside of and south of the fence which is to the north there is a narrow strip of land. The outer extremity is the north boundary of the river. There is no evidence the effect of which is to say that this was not also the north boundary of the river in 1932.

The claim asserted by the plaintiff in this action is

that he was entitled to have title quieted in him to the land extending from the fence line which is to the north of the river to his lands to the south, which included the area claimed by the defendant, on the basis of adverse possession.

Principles which are essential to the establishment of title to land by adverse possesssion to real estate are stated in Ohm v. Clear Creek Drainage Dist., 153 Neb. 428, 45 N. W. 2d 117, as follows:

"A person claiming title by adverse possession must, to establish it, prove open, notorious, exclusive, continuous, and adverse possession of the real estate for the full period of ten years.

"In order to create title by adverse possession, the possession, in addition to other elements, must be exclusive for the period of limitations.

"One claiming ownership of real estate by adverse possession must recover upon the strength of his title and not because of a possible weakness in the title of his adversary." See, also, other cases cited in the opinion.

Evidence of the plaintiff indicated that the area which he was claiming by adverse possession, which included the portion of the disputed area in the riverbed and the strip of land south of the fence, produced grass fit for pasture during the dry season and that from 1932 thenceforth he used all of this area as pasture for cattle, horses, and mules, to the exclusion of all others for that purpose. There was also evidence that it was to some extent used for hunting, trapping, and fishing.

There is no substantial contradiction of the evidence of plaintiff that his use for pasture was open, notorious, and continuous, and that no others used it for that purpose. The dispute in actuality revolves around the question of whether or not use for the purposes of hunting, trapping, and fishing by the defendant defeats the claim of plaintiff to title by adverse possession.

The evidence of the defendant was to the effect that the area in question was adaptable and suitable for

hunting and that it had been used by him over the years for that purpose. There is however no evidence on his part to support a claim of right to title by adverse possession on account of this use. It is however his theory that his use for this purpose defeats a right of the plaintiff to claim title by adverse possession.

The evidence on behalf of the plaintiff discloses that the area was adaptable and suitable for hunting, trapping, and fishing and had been leased for such purposes. The testimony disclosed that land of plaintiff in the area had been leased on one occasion for $600 a year and on others for lesser amounts.

The parties are therefore in agreement that this area in its nature was adapted to and used for hunting. In Worm v. Crowell, 165 Neb. 713, 87 N. W. 2d 384, it was said: "The possession is sufficient if the land is used continuously for the purpose to which it may be in its nature adapted." See, also, Walker v. Bell, 154 Neb. ·221, 47 N. W. 2d 504; James v. McNair, 164 Neb. 1, 81 N. W. 2d 813.

In Burket v. Krimlofski, 167 Neb. 45, 91 N. W. 2d 57, it was said: "The claim of title to land by adverse possession must be proved by actual, open, exclusive, and continuous possession under a claim of ownership for the statutory period of 10 years. The possession is sufficient if the land is used continuously for the purpose to which it may be in its nature adapted."

An inescapable corollary to this rule is that title may not be granted or quieted on the theory of adverse possession in the absence of proof of exclusive possession for a purpose to which the land is adapted for the statutory period of 10 years.

In the light of these rules, while on the record it may well be said that the plaintiff did establish actual, open, exclusive, and continuous possession for use over the area as pasturage for much more than 10 years, he did not however establish exclusive possession against the other purpose for which it was adapted, that is

hunting. The testimony of the plaintiff Oliver given at the trial with reference to the area in dispute, as follows, is to the contrary: "Q Do you know whether—are you familiar with that island, the island marked 'E' on Plaintiff's Exhibit No. 1? Are you thoroughly familiar with that island? A I am pretty familiar with most all of those islands. Q And do you know that there is a blind on the south side of it and on the west side of it? A Oh, there might be—I think I saw some blinds in there. Q And do you know that, as a fact, people have hunted off of that island from the north side for years? A A number of people—some from the south side and some from the north. Q And you think they weren't claiming any interest contrary to your interest? A I don't think they were, no. Q It was all right with you for them to hunt there? A Yes, when— Q All right. A There was as much right for one as it was for the other, yes. Q You weren't claiming the right to hunt there—the exclusive right to hunt there, were you? A We claimed the same right that the others had, see. Q You weren't claiming the exclusive right to hunt there, were you? A No. No, I didn't claim any exclusive right to hunt there. * * * Q And you testified this morning that you leased the land for hunting for as much as $600.00 a year. A That was my side of the river. Q That's what I'm getting at, that was just your side of the river. A Uh-huh. Q You never proposed to lease the north side of the river for hunting? A No, I don't think I did, no, I had no—I had no right to."

In the light of this it must be said the evidence fails to sustain the cause of action pleaded in his petition and the judgment in his favor must be reversed.

By cross-petition the defendant seeks to have title quieted in him to an undescribed area south of what has been referred to herein as the present north bank of the North Platte River. His claim is made to depend upon three asserted grounds; namely, accretion,

adverse possession, and ownership to the middle of the river. By assignments of error he contends that on these grounds he was entitled to judgment in his favor.

As to his first ground he asserts substantially that some area south of the north bank of the river is accretion to his land which is bounded on the south by this bank.

The simple answer to this is that there is no competent evidence of probative value from which it could be reasonably inferred that any portion of the area came into being by accretion.

As to the second ground there is a total absence of evidence to sustain a title based on adverse possession.

As to the third ground it may be true that he has some rights, but whatever rights he has, if any, have not been sustained by the evidence adduced at the trial.

The North Platte River at this location is a nonnavigable river and on this account the defendant owns to the centerline or thread of the river. In Hardt v. Orr, 142 Neb. 460, 6 N. W. 2d 589, this court said: "Grants of land bounded upon rivers in this state carry with them the exclusive right and title of the grantees to the center or thread of the stream, unless the terms of the grant clearly denote an intention to stop at the bank or margin of the river. * * * 'The thread or center of a channel, as the term is above employed, must be the line which would give the owners on either side access to the water, whatever its stage might be, and particularly at its lowest flow.' " See, also, Higgins v. Adelson, 131 Neb. 820, 270 N. W. 502; In re Application of Central Nebraska Public Power & Irr. Dist., 138 Neb. 742, 295 N. W. 386; Ohm v. Clear Creek Drainage Dist., *supra;* Heider v. Kautz, 165 Neb. 649, 87 N. W. 2d 226. This is true of course unless title has been acquired thereto by someone else by adverse possession. As already pointed out as to this case adverse possession has not been proved.

The evidence here discloses that in 1932 the south

boundary of the defendant's land was the north bank of the river. Under the evidence and applicable law he is owner southward to the thread or center of the channel. Where that channel is, within the meaning of the law, is not made to appear by the record in this case. There is evidence that there are at least two channels through which water flows, but there is nothing disclosing the location of the legally recognizable channel and the thread or center thereof.

It follows that there is nothing in the record to justify an adjudication that the defendant is the titleholder of any particular area south of the fence except the narrow strip of land between the north bank and the fence line.

Merely as an observation and not as an adjudication, it appears that the defendant may have rights subject to protection from encroachment south of this bank but in the state of the record they may not be determined in this action.

Accordingly the judgment rendered in favor of the plaintiff is reversed. The judgment which was rendered against the defendant on his cross-petition is reversed and the cause remanded with directions to render judgment in his favor quieting title in him to the strip of land between the north bank of the river and the fence referred to herein. The cross-petition is otherwise dismissed, without prejudice however to his right to assert in an appropriate action a right to title to the area from the north bank of the river to the thread of the river. Each party shall pay his own costs.

AFFIRMED IN PART, AND IN PART REVERSED
AND REMANDED WITH DIRECTIONS.