TONY ABOOD ET AL., APPELLANTS AND CROSS-APPELLEES, V. EMMA JOHNSON, APPELLEE AND CROSS-APPELLANT.

200 N. W. 2d 20

Filed August 4, 1972. No. 38414.

· Gary ·L. Hogg, for appellants.

Knapp, Tarrell, State & Yeagley, for appellee.

Heard before WHITE, C. J., BOSLAUGH, SMITH, McCOWN, NEWTON, and CLINTON, JJ.

McCOWN, J.

This is a boundary line dispute between adjoining landowners. The court found generally in favor of the plaintiffs, fixed the boundary line, and awarded damages to the plaintiffs for a fence destroyed by the defendant. The plaintiffs have appealed contending that the boundary line fixed by the court did not include all the land enclosed by the fence. Defendant's cross-appeal contends that the line should be the lot line.

Plaintiffs were the owners of Lot 6, and defendant was the owner of Lot 7, both located in Section 12, Township 8, Range 16, Buffalo County, Nebraska. The quarter-section line running north and south in Section 12 was the lot line between the two lots. Lot 6 was east of the line and Lot 7 was west of it. The Platte River formed the north boundary of both properties and a county road formed the south boundary. The distance from north to south was approximately 1,500 feet. The plaintiffs first acquired an interest in Lot 6 in 1926, and became the sole owners in 1953. Defendant acquired Lot 7 in 1947.

The allegations and evidence of the plaintiffs were that a boundary line fence had been in existence for at least 50 years. It extended the entire distance of the lot line but was located some distance west of it. Plaintiffs' evidence fixed the location of the boundary line fence 61 feet west of the lot line at the south, 49.2 feet west of the line at a point near the center of the properties, and 28 feet west of the line at the north end of the properties.

The defendant contends that the correct boundary was the lot line; that there was no fence which was a boundary line fence; and that any use which plaintiffs had made of Lot 7 was with permission. Defendant has cross-appealed from that portion of the decree which fixes any part of the boundary line at any point other than the platted lot line.

Evidence convincingly established the existence of a fence between the two properties for more than 50 years. The fence was located at a point west of the quarter-section lot line but the exact distance west of the line at particular locations in prior years was not surveyed or measured. The evidence was undisputed that the plaintiffs had dug and established an irrigation well approximately 40 feet west of the lot line on the south end of the properties and had used it continuously since 1957. The evidence was also undisputed that the plaintiffs had planted and cultivated crops on much of the south half of the disputed area. The evidence was convincing that plaintiffs had built and maintained a silo or ensilage bed at a point some 700 feet north of the south line of the properties. The west edge of the ensilage bed was 49.2 feet west of the lot line. The evidence is undisputed that in 1967, the plaintiffs and defendant jointly removed approximately 400 feet of fence at the north end of the property to permit gravel operations to continue moving easterly along the south side of the Platte River and from defendant's to plaintiffs' property. In April of 1971, the defendant used a bulldozer and destroyed the fence on the remainder of the property. At the trial, the evidence established that there were some broken fence posts at the south edge of the property 61 feet west of the lot line. There was a fence post on the west side of the ensilage bed approximately 700 feet north of the south line and 49.2 feet west of the lot line. There was a broken concrete fence post some 400 feet further north. A line connecting these three specific locations and extended north for

the remaining distance of approximately 400 feet ends 28 feet west of the lot line at the north border. Plaintiffs' evidence was that the fence had been located on that line. There is no evidence that a fence was ever located on the lot line at any point.

The court found generally in favor of the plaintiffs, fixed the boundary line, and directed the preparation of a survey accordingly. The boundary fixed by the court commenced 43.7 feet west of the platted lot line on the south, rather than 61 feet as shown by the plaintiffs' evidence; the next point was some 740 feet north, and at that point the line fixed by the court and the line established by plaintiffs' evidence were identical, both being 49.2 feet west of the lot line. From that point, the boundary fixed by the court ran generally north but toward the east where it joined the lot line at a point some 400 feet further north. The boundary then continued to the north end of the properties on the quarter-section lot line. The court also awarded damages to the plaintiffs for the fence destroyed by the defendant.

A thorough review of the record confirms the court's general findings in favor of the plaintiffs. The boundary line fixed by the court, however, does not fully conform to the evidence. The trial court did not indicate the basis upon which the boundary was fixed, nor make specific explanatory findings. The court determined that the dividing line on the north 400 feet of the property should be the quarter-section lot line rather than any fence line. Comments in the record indicate that determination was made because the plaintiffs and defendant had jointly removed the fence in that area for the sole purpose of removing gravel from both properties in 1967.

We believe this case is controlled by McCain v. Cook, 184 Neb. 147, 165 N. W. 2d 734. It is the established law of this state that, when a fence is constructed as a boundary line between two properties, and parties claim ownership of land up to the fence for the full statutory

period and are not interrupted in their possession or control during that time, they will, by adverse possession, gain title to such land as may have been improperly enclosed with their own. See, also, Ohme v. Thomas, 134 Neb. 727, 279 N. W. 480.

"After the running of the statute, the adverse possessor has an indefeasible title which can only be divested by his conveyance of the land to another, or by a subsequent disseisin for the statutory limitation period. It cannot be lost by a mere abandonment, or by a cessation of occupancy, or by an expression of willingness to vacate the land, or by the acknowledgment or recognition of title in another, or by subsequent legislation, or by survey." McCain v. Cook, *supra*.

Under the evidence here, the plaintiffs had acquired title to the property long before 1967, either by boundary line acquiescence or adverse possession, or both. Plaintiffs' title could be divested by nothing short of a validly executed deed, by adverse possession, or by other legal means not pertinent here.

The county surveyor who testified on behalf of both parties also prepared exhibit 57, describing the boundary fixed by the court. The surveyor also prepared a survey reflecting the fence line as established by plaintiffs' evidence. This survey was exhibit 50, but it was not admitted into evidence because a copy of it had not been furnished to the defendant within the time specified in the pretrial order. The surveyor did testify as to the location of the various points used as the basis of that survey and that he had observed the fence posts at the points shown. Exhibit 50 designates the line on which the dividing line fence was located in reference to the north-south quarter-section line. Exhibit 50 may not be complete insofar as a legal survey description of the property line is concerned, but subject to any such technical completion, it designates the boundary line established by the plaintiffs' evidence.

The decree of the district court was generally correct

but it should be modified by substituting the division line shown in exhibit 50 for the line shown in exhibit 57 and described in paragraph 2 of the journal entry. As so modified, the decree is affirmed.

AFFIRMED AS MODIFIED.

SPENCER, J., participating on briefs.