HERMAN WIEDEMAN, APPELLEE, V.
JAMES E. SIMON CO., INC., APPELLANT.

307 N.W.2d 105

Filed June 19, 1981.  No. 43293.

Winner, Nichols, Meister & Douglas for appellant.

Wright & Simmons for appellee.

Heard before BOSLAUGH and WHITE, JJ., and RONIN, BARTU, and KELLY, District Judges.

BARTU, District Judge.

Defendant-appellant, James E. Simon Co., Inc., appeals the decision quieting title of a 2.57-acre tract in the plaintiff-appellee, Herman Wiedeman, by adverse possession and from an award for damages.

The 2.57-acre tract in question is a strip of land approximately 100 feet by 1,150 feet lying south of the legal line between the north and south halves of the north half of Section 27, Township 22 North, Range 54 West of the 6th P.M. in Scotts Bluff County, Nebraska. Plaintiff is the record title owner since 1965 by deed from David Wiedeman, his father, of the north half of the north half of that section, and defendant is the record title owner since 1977 by deed from

John C. Herstead and Helen A. Herstead of land adjoining that of the plaintiff on the south, described as that part of the south half of the north half of Section 27 north of the Winter's Creek canal right-of-way.

At least as far back as 1944 there has been a fence in the general vicinity of the boundary line between the two properties, running east and west. From the west line of the section the fence runs approximately straight east about 1,150 feet, then jogs north about 100 feet to near the line between the north half of the north half and the south half of the north half of Section 27. It is this area between the actual boundary and the fence to the south which is in dispute.

The land comprising the strip and the land either side of it to the north and south consist of a sandy-gravel soil covered with cactus, junk, and variable grass. It has been used as a dump ground, and the trash that has been dumped there was never completely cleaned up. The fence along the south side of the disputed area was connected with the fence along the road on the west side of defendant's property. There has never been a fence along the road on the west end of the disputed area or along the west side of plaintiff's land.

When Wiedeman moved to the property in 1944 as tenant for his father, part of the disputed area had been used as a dump. He put up a sign prohibiting dumping and cleaned up some of the trash. The second year he was on the land he pastured the land in the disputed area. He has pastured the area about every third year since then, up until about 3 years prior to trial, in conjunction with pasturing the roughage from a rotation of beets and corn on the farmland to the north.

In pasturing this land, the plaintiff would put up an electric fence on the west and north and completely fence in the disputed land with the rest of his land. When this land was pastured there was a high of 200 to

250 cattle on the land for 6 weeks to 2 months. Limited vegetation in the disputed area would not justify a permanent fence on the west and pasturing it each year. The plaintiff also rented land, including the disputed area, a couple of times to persons who pastured sheep thereon. At one time he hauled gravel out of the disputed area for use in his yard. Throughout the years, the plaintiff maintained the fence which bordered the disputed area on the south.

At no time did defendant's predecessors in title, the Hersteads and L. M. Bryan, claim ownership to any land north of the fence. There was a period of time for approximately 10 years prior to the Hersteads' ownership that the plaintiff leased the land south of the fence under an oral lease with L. M. Bryan. There was no evidence that the plaintiff did or intended to lease land north of the fence. The plaintiff claimed ownership of the disputed land and used the land up to the fence continuously since 1944. In the past there had been negotiations undertaken by the plaintiff to sell land, of which the disputed area was a part, to people who wanted to build homes thereon. At one time the plaintiff offered to sell an acre for $4,000 and turned down an offer of $3,500. Another time the plaintiff was offered $50,000 by a contractor for 8 acres of farmland and gravel area.

Lew Herstead, son of the defendant's predecessor in title, testified that he did not have any knowledge of the plaintiff maintaining the fence and did not ever see any cattle pastured in the disputed area. However, Herstead was never out on the land when this would have been going on. He did not believe the fence to be on the exact survey mark and did not know "where the land was lost from or gained." Herstead also testified that he had the impression that Wiedeman thought the fence was not quite on the line, but that "he lost as much as we had, that it was a give and take proposition between the two lines."

After the defendant purchased its property in 1977,

it began making preparations for gravel excavation on the disputed area. About this time, Cecil Simon, superintendent for the defendant, approached the plaintiff to let him know what they would be doing. Simon testified that he knew the plaintiff had been using that land up until that time. The defendant had a survey made, tore down the fence, drilled a well, and began to excavate gravel on the disputed area.

This matter is triable in this court de novo. However, in determining an appeal in an equity action involving questions of fact, this court will, in determining the weight of the evidence where there is an irreconcilable conflict therein on a material issue, consider the fact that the trial court observed the witnesses and their manner of testifying.

This court has many times set forth the standard for the burden of proof of adverse possession as a preponderance of the evidence to show that the claimant had been in actual, open, exclusive, and continuous possession under a claim of ownership for 10 years. *Pettis v. Lozier*, 205 Neb. 802, 290 N.W.2d 215 (1980); *Barnes v. Milligan*, 200 Neb. 450, 264 N.W.2d 186 (1978); *Cunningham v. Stice*, 181 Neb. 299, 147 N.W.2d 921 (1967); *Mentzer v. Dolen*, 178 Neb. 42, 131 N.W.2d 671 (1964); *Purdum v. Sherman*, 163 Neb. 889, 81 N.W.2d 331 (1957).

Defendant argues that the burden of proof in an adverse possession case is by clear and convincing evidence and that the plaintiff failed to meet that burden. To the extent that *Foos v. Reuter*, 180 Neb. 301, 142 N.W.2d 552 (1966), and *Wells v. Tietge*, 143 Neb. 230, 9 N.W.2d 180 (1943), establish a clear and convincing standard, they are overruled.

To gain title by adverse possession against a true owner, acts of dominion over the land must be so open, notorious, and hostile as to put an ordinarily prudent person on notice of the fact that his lands are in the adverse possession of another. *Shirk v. Schmunk*, 192 Neb. 25, 218 N.W.2d 433 (1974); *Whaley v. Mingus,*

188 Neb. 351, 196 N.W.2d 516 (1972); *Mentzer v. Dolen, supra; Fitch v. Slama,* 177 Neb. 96, 128 N.W.2d 377 (1964).

The sufficiency of the possession in an action of this kind depends upon the character of the land and the use that can reasonably be made of it. The possession is sufficient if the land is used continuously for the purpose to which it is adapted. *Cunningham v. Stice, supra; James v. McNair,* 164 Neb. 1, 81 N.W.2d 813 (1957); *Oliver v. Thomas,* 173 Neb. 36, 112 N.W.2d 525 (1961); *Walker v. Bell,* 154 Neb. 221, 47 N.W.2d 504 (1951).

Where a fence is constructed as the boundary line, although it is not the actual boundary line, and the parties claim ownership of land up to the fence for the uninterrupted statutory period, the parties gain title to such land by adverse possession. *Conkey v. Anderson Farms, Inc.,* 205 Neb. 708, 289 N.W.2d 541 (1980); *Vetick v. Kula,* 197 Neb. 209, 247 N.W.2d 637 (1976); *Hendrickson v. Glaser,* 204 Neb. 492, 283 N.W.2d 41 (1979); *Shirk v. Schmunk, supra; Abood v. Johnson,* 189 Neb. 87, 200 N.W.2d 20 (1972); *McCain v. Cook,* 184 Neb. 147, 165 N.W.2d 734 (1969).

The nature and character of the disputed tract was near to wasteland insofar as agricultural purposes were concerned. Its terrain was gently rolling with a sandy-gravel soil which rendered it useless for crop production. Prior to plaintiff's possession in 1944, it was used as a dumping ground for junk. Subsequent to his possession it was used continuously for the grazing of livestock as growth of vegetation and rotation of other crops on grounds north of the disputed tract would permit. The only natural vegetation it supported was cactus, sagebrush, and isolated bunches of grass.

Subsequent to plaintiff's possession he posted the disputed tract, closing it to dumping. He continuously maintained the perimeter fence on the south side of the tract. These acts, coupled with the use of the land

continuously for the purpose to which it was adapted, were all open, notorious acts of dominion which gave notice to defendant's predecessors in title of plaintiff's claim to the disputed tract.

The evidence conclusively establishes that the plaintiff and defendant's predecessors in title considered the south fence on the disputed strip as the boundary line between their respective properties from 1944 to the time that the defendant purchased the land with notice of plaintiff's claim to the same.

Plaintiff has shown, by a preponderance of the evidence, actual, open, exclusive, and continuous possession of the disputed tract under a claim of ownership for more than 10 years. The District Court's decision quieting title to the disputed tract in the plaintiff should be and is hereby affirmed.

Defendant concedes that the trial court's assessment of damages for the removal of gravel was correct if the plaintiff had title to the disputed tract. Defendant does argue, however, that the plaintiff failed to show, by a preponderance of the evidence, ownership of the fence destroyed by the defendant. This contention is without merit inasmuch as plaintiff did assert claim to the real estate and all appurtenances thereto by his maintenance and use of the fence as his own. Evidence establishes $700 as the fair and reasonable replacement cost of the fence destroyed. Plaintiff's award of damages from the defendant in the sum of $1,808.84 for the removal of gravel and in the sum of $700 for the destruction of a fence, in a total sum of $2,508.84, should be and is hereby affirmed.

AFFIRMED.