JOHN J. PLETTNER AND DORIS E. PLETTNER, HUSBAND AND WIFE, ET AL., APPELLEES, V. EARL W. SULLIVAN, SR., and RUTH E. SULLIVAN, HUSBAND AND WIFE, APPELLANTS.

335 N.W.2d 534

Filed June 17, 1983. No. 82-291.

Lathrop, Albracht & Swenson, and Richard A. Bruckner, for appellants.

E. Terry Sibbernsen of Welsh, Sibbernsen & Roach, for appellees.

McCOWN, CAPORALE, and SHANAHAN, JJ., and BRODKEY, J., Retired, and COLWELL, D.J., Retired.

SHANAHAN, J.

Defendants, Earl W., Sr., and Ruth E. Sullivan, appeal the decree of the District Court for Douglas County that the plaintiffs, John J. and Doris E. Plettner and Joel A. and Bernice Plettner, through

adverse possession, have acquired title to certain real estate otherwise described in the defendants' deed and, further, have acquired a prescriptive easement in part of the road located in the disputed area. Sullivans claim that Plettners have not satisfied the elements of adverse possession and a prescriptive right. We affirm in part as modified and reverse in part.

Plettners' land, acquired by deed, adjoins Sullivans' land located to the east. Both Plettners and Sullivans have a common grantor, Lehar Valley Farms, which is also known as Fremont Hatchery (Hatchery).

In 1962 Plettners bought their parcel from the Hatchery. From 1962 until 1978 the Plettners and the Hatchery jointly used a road which provided access to the Plettner tract located west of the road. On the east side of this road and on the land owned by the Hatchery, there were buildings designated as "chickenhouse #3" and "chickenhouse #4." Chickenhouse #4 was located near the southwest corner of the Hatchery tract and was some 300 feet in length, running north and south. Attached at the northeast corner of chickenhouse #4 was a fence which, likewise, was attached to the southwest corner of chickenhouse #3 located north of chickenhouse #4. From chickenhouse #3 a fence then ran north to the northern boundary of the property. The road which provided common access for Plettners and the Hatchery ran parallel with and the length of chickenhouse #4.

In 1963 Plettners planted a row of trees 20 feet west of chickenhouse #4 and parallel to the road. In 1972 Plettners improved the road by making it "rock-topped." From 1971 to 1973 the Plettners built three cabins west of the road, for which the only access was the road mentioned. Plettners believed the boundary was located 10 feet west of chickenhouses #3 and #4, respectively. The Hatchery did not conduct any of its activities on any land

lying west of the road. This situation persisted until 1978, when the Hatchery ceased its operations on the tract east of the road.

On July 28, 1979, Sullivans bought their tract from the Hatchery and then obtained a survey for their property. The Sullivan survey disclosed that the true boundary between the Plettner parcel and the tract acquired by the Sullivans was actually 30 feet west of the chickenhouses. Based on the survey, Sullivans erected a fence on August 8, 1979. This fence was located in the road west of the chicken-houses and prevented access to the Plettner parcel from the road. On August 10, 1979, Plettners filed a quiet title action.

The trial court held that Plettners had acquired by adverse possession all land lying west of a line lo-cated 10 feet from the chickenhouses. Also, the trial court held that each party acquired a prescriptive easement 10 feet wide on each side of the boundary determined with respect to chickenhouse #4, so that each of the parties acquired a "reciprocal ease-ment" as a result of their adverse possession. Such "reciprocal easement" was restricted to access for land on either side of the road, with the additional restriction on the Sullivan prescriptive easement that it existed for "building maintenance purposes only." As a consequence of such determination by the District Court, Sullivans lost approximately one-half of the road to Plettners through adverse posses-sion but gained a prescriptive easement in that part of the road gained by the Plettners.

On appeal the crucial question relates to exclusive possession on the part of Plettners.

Because this is an equity action there is a trial de novo in this court. However, regarding questions of fact, this court recognizes that the trial court ob-served the witnesses and their manner of testifying. *Wiedeman v. James E. Simon Co., Inc.*, 209 Neb. 189, 307 N.W.2d 105 (1981).

To establish title by adverse possession the claim-

ant must show by a preponderance of evidence that such claimant has been in actual, open, exclusive, continuous, and adverse possession under a claim of ownership for 10 years. *Wiedeman v. James E. Simon Co., Inc., supra*. To acquire a prescriptive easement a claimant must prove virtually the same elements required for adverse possession, namely, the claimant must show that the use and enjoyment of the land is exclusive, adverse, continuous, open, and under claim of right for 10 years. *Masid v. First State Bank*, 213 Neb. 431, 329 N.W.2d 560 (1983).

Acquisition of a prescriptive easement differs in certain features from the acquisition of title by adverse possession. See, Annot., 27 A.L.R.2d 332, n.5 at 334-35 (1953); *Thompson v. Schappert*, 229 Iowa 360, 294 N.W. 580 (1940). Adverse possession provides the claimant with title to the land, while a prescriptive easement provides the claimant with only a limited use or enjoyment of another's land. 3 Am. Jur. 2d *Adverse Possession* § 4 (1962). See *Elsasser v. Szymanski*, 163 Neb. 65, 77 N.W.2d 815 (1956). Also, the conduct required for adverse possession differs from that required for a prescriptive easement. For adverse possession there must be possession and occupation of the land, which involves acts of dominion by a claimant which will place the owner on notice that the claimant is asserting ownership of the land. 3 Am. Jur. 2d *Adverse Possession, supra*; 5 G. Thompson, Commentaries on the Modern Law of Real Property § 2542 at 602 (Repl. 1979). See, also, *Weiss v. Meyer*, 208 Neb. 429, 303 N.W.2d 765 (1981). Such adverse possession must exclude all others, including the true owner. 2 C.J.S. *Adverse Possession* § 55 (1972); see *Hutson v. The Rush Creek Land and Livestock Co.*, 206 Neb. 658, 294 N.W.2d 374 (1980). In contrast, to acquire a prescriptive easement there needs to be only an adverse use for the prescriptive period. 3 Am. Jur. 2d *Adverse Possession, supra*; 2 G. Thompson, Commentaries on the Modern Law of Real Property § 335

at 140-44 (Repl. 1980); 5 G. Thompson, Commentaries on the Modern Law of Real Property, *supra.* See, also, *Masid v. First State Bank, supra.*

In the present case Plettners occupied the land lying west of the road. The Plettners planted trees at the west edge of that road in 1963. The evidence is clear that Plettners claimed as their own that land west of the road. Plettners demonstrated their dominion over the land west of the road, and their occupancy of the land was to the exclusion of all others. Plettners, by a preponderance of the evidence, have proved the elements of adverse possession regarding the land west of the road. The District Court judge was correct in determining the boundaries, but should have excluded the road from the area acquired by adverse possession. Regarding the road itself, Plettners have failed to prove that they occupied the road, to the exclusion of the Hatchery. The absence of the required exclusivity prevents Plettners' acquisition of title by adverse possession with respect to the road.

The question remains whether Plettners have acquired a prescriptive easement in the jointly used road. One acquires a prescriptive easement through use which is exclusive, adverse, under a claim of right, continuous and uninterrupted, and open and notorious for the full prescriptive period. Cf. *Masid v. First State Bank, supra.* Where the claimant-user shows that the use has been open, visible, continuous, and unmolested for the prescriptive period, the use is presumed to be under a claim of right. Cf. *Fischer v. Grinsbergs*, 198 Neb. 329, 252 N.W.2d 619 (1977).

The evidence establishes that Plettners used the road after their purchase of the land in 1962 until their use was prevented by the fence erected by Sullivans in 1979. The Hatchery acknowledged that Plettners had a right to use the road for access to Plettners' land, and certainly such use of the road was viewed by Plettners as vital to the continued

enjoyment of their land west of the road. The common or joint use of the road by the Hatchery and Plettners existed for a period in excess of 16 years, until the Hatchery conveyed the land east of the road to Sullivans in 1979.

Finally, while Plettners lacked exclusive possession to acquire title to the road, they did have exclusive use to gain a prescriptive easement. Whereas the exclusivity required for adverse possession relates to "all others" or to "all the world," the exclusive use for acquisition of a prescriptive right or prescriptive easement is not so comprehensive. The word *exclusive* in reference to a prescriptive easement does not mean that there must be use only by one person but, rather, means that the use cannot be dependent upon a similar right in others, i.e., the user must exclude the public at large. Cf. *Scoville v. Fisher*, 181 Neb. 496, 149 N.W.2d 339 (1967). Exclusion of the owner is not required for acquisition of a prescriptive easement. Cf. 25 Am. Jur. 2d *Easements and Licenses* § 59 (1966). Here, the Plettners' use excluded the public at large.

Consequently, Plettners did acquire a prescriptive easement in the road. Sullivans, as successors to the Hatchery, still own the land on which the road in question is located, but Sullivans' land is subject to the prescriptive easement in the road.

For the reasons given above, the judgment and decree of the District Court is affirmed with respect to the adverse possession of Plettners, except there is no adverse possession of that land on which the road is located. The judgment and decree of the District Court is reversed concerning the reciprocal easements, and the District Court is directed to enter judgment that Plettners have a prescriptive easement regarding the road in question.

AFFIRMED IN PART AS MODIFIED,
AND IN PART REVERSED.