GILBERT HORKY ET AL., APPELLANTS, V. WAYNE
SCHRINER ET AL., APPELLEES.
340 N.W.2d 1

Filed November 4, 1983. No. 82-662.

Donald W. Walters, for appellants.

James H. Spears, for appellees.

KRIVOSHA, C.J., HASTINGS, CAPORALE, and GRANT, JJ., and BRODKEY, J., Retired.

CAPORALE, J.

This is an appeal from a decree in equity quieting title by adverse possession and awarding damages for trespass. We affirm.

Plaintiffs-appellants Gilbert Horky and Bethel Horky are the owners of record of the southwest quarter of Section 3, Township 16 North, Range 12 West, of the 6th P.M., in Howard County, Nebraska. Plaintiff-appellant Roger Paulson is the purchaser of this southwest quarter under an executory land contract. Defendants-appellees, Wayne Schriner and Elaine Schriner, husband and wife, are the purchasers under an executory land contract of the southeast quarter of the above-described section.

Plaintiffs filed this action to quiet their title to the disputed land. The Schriners counterclaimed and prayed that title be quieted in them and that they be compensated for the damages caused by plaintiffs' trespass. The trial court dismissed plaintiffs' petition, quieted title to the disputed land in the Schriners, and awarded them a judgment in the sum of $150 against plaintiff Paulson for the damages caused by Paulson's placement of fenceposts upon the disputed land.

The issues framed by plaintiffs' assignments of error are (1) whether possession of the disputed land by the Schriners and their predecessors in title was adverse for more than 10 years and (2) whether the evidence supports an award of damages to the Schriners.

Actions to quiet title based upon adverse possession are equitable in nature and, as such, are reviewed under the usual rule pertaining to the scope

of review of actions in equity. *Bartlett v. Kloepping*, 195 Neb. 755, 240 N.W.2d 592 (1976).

In the 1800s a fence line was erected by plaintiffs' predecessor in title near the eastern boundary of the southwest quarter of Section 3 which abuts the Schriners' quarter section. The fence begins near the actual southeast corner of the southwest quarter and runs in a slightly northwesterly direction, ending at a point somewhat west of the northeast corner of the southwest quarter. The land in dispute is that area located within the southwest quarter but on the east side of the fence line.

The southeast quarter was held by Frank Tuma from 1907 until his death in 1976. His widow, Hilda Tuma, lived on the southeast quarter with her husband from 1921 until 1949. Mrs. Tuma testified that during the time she lived on the property with her husband, they grazed cattle up to the disputed fence line, planted crops on the disputed land, and kept the fence in repair. At all times she and her husband considered the land to be theirs. In 1978 Mrs. Tuma sold the land to Randall F. Thompson and Sharon K. Thompson, husband and wife, who entered into a contract for its sale to the Schriners in 1980.

The Horkys bought the southwest quarter in 1952 from Gilbert Horky's brother. Gilbert Horky expressed familiarity with that land and the fence line since the 1920s. He substantiates Mrs. Tuma's testimony that the disputed land was used by the Tumas to graze cattle and to farm as well. Gilbert Horky also testified that when he purchased the land, he considered the fence line to be his eastern border. He also testified that the Tumas were responsible for maintaining the fence. In 1977 the Horkys entered into a contract for the sale of the southwest quarter to the other plaintiff, Roger Paulson.

In 1980 Paulson had the southwest quarter surveyed and learned that the fence line was inside the eastern boundary. In November of 1980 Paulson

placed fenceposts on the survey line east of the old fence. Shortly thereafter, the Schriners removed them.

The plaintiffs' main contention is that the placement of a fence inside one's borders does not grant title to the lands outside the fence to neighboring landowners. In support of that proposition they cite *Elsasser v. Szymanski*, 163 Neb. 65, 77 N.W.2d 815 (1956), and *Linch v. Nichelson*, 178 Neb. 679, 134 N.W.2d 796 (1965).

In *Elsasser* a sidewalk was constructed some 5 to 6 inches from the true lot line dividing two residences. At a later time the sidewalk was widened to abut on the line. The adjoining lot owner claimed that the original sidewalk placement evidenced an acquiescence in his ownership of the 5 to 6 inches. This court held that the placement of the sidewalk was of no importance and that persons claiming lands of another by adverse possession must establish title by their own actions under a claim of ownership. The only evidence of the claimant neighbor's use of the 5- to 6-inch strip was that occasionally a wheel of a vehicle entering the claimant's driveway crossed onto the disputed land. We held such incidental use was not enough to establish adverse possession; the owner was not required to extend the sidewalk to the property line the first time he constructed it.

In the *Linch* case a farmer placed a fence line some 27 feet inside his northern section line in anticipation of a section road which was never built. His neighbor to the north brought suit to quiet title to the lands lying south of his section line up to the fence. No use of the land by the claimant could be shown other than as a turnaround area for farm machinery. This court reaffirmed the *Elsasser* rule and found that the placement of a fence by a landowner inside his boundary does not lead to a relinquishment of ownership of lands outside his fence

without an additional showing that the claimant of those lands used them under a claim of ownership.

The case at hand is not similar to either *Elsasser* or *Linch*. Here, the defendants' predecessor in title, Mrs. Tuma, testified that for the 28-year period she and her husband lived on the land, they considered the fence line to be the boundary. They grazed cattle up to the fence line and even placed some of the disputed land under tillage. She also testified that they kept the fence in repair. Gilbert Horky testified that he considered the fence line the border, saw the Tumas grazing cattle on the disputed land, and considered the repair of the fence line to be the responsibility of the Tumas.

The Schriners cite us to the case of *Wiedeman v. James E. Simon Co., Inc.*, 209 Neb. 189, 307 N.W.2d 105 (1981), and it is clearly analogous to the instant case. In *Wiedeman* the claimant used the disputed land for grazing livestock, posted it, closed it to dumping, and maintained the perimeter fence over the requisite 10 years. We stated therein: "Where a fence is constructed as the boundary line, although it is not the actual boundary line, and the parties claim ownership of land up to the fence for the uninterrupted statutory period, the parties gain title to such land by adverse possession. [Citations omitted.]" *Id.* at 193, 307 N.W.2d at 108. See, also, *Petsch v. Widger*, 214 Neb. 390, 335 N.W.2d 254 (1983). We also stated in *Wiedeman* that to gain title by adverse possession, the acts of dominion over the land must be so open, notorious, and hostile as to put an ordinarily prudent person on notice of the fact that his lands are in the adverse possession of another.

Plaintiffs argue that the placement of the barbed wire on the side of the fence facing their land indicates, by custom and usage, that the fence is theirs. This fact, they argue, together with what they claim to be the irregularity of the fence line, shows that the fence was never intended to demarcate the

boundary line. One of the difficulties with this argument is that ownership of the fence is immaterial. Moreover, whatever inference might arise from the placement of the barbed wire, if any, is overcome by the testimony of Gilbert Horky and Hilda Tuma. Furthermore, the record fails to support plaintiffs' claim that the placement of the fence is so irregular that it obviously was not intended as a boundary line. The photograph to which they point shows almost nothing in that regard, and the survey shows the fence line to be straight and regular.

Plaintiffs also make much of Gilbert Horky's testimony that during the last few years of his ownership, prior to 1977, Mr. Tuma only occasionally ran cattle on the disputed land. This is clearly not a dispositive factor in this case. As was said in *Hendriokson v. Glaser*, 204 Neb. 492, 495, 283 N.W.2d 41, 43 (1979): "After the running of the statute, the adverse possessor has an indefeasible title which can only be divested by his conveyance of the land to another, or by a subsequent disseisin for the statutory limitation period."

A claim of adverse possession must be proved by a preponderance of the evidence showing actual, open, exclusive, and continuous possession under a claim of ownership for a period of 10 years. *Petsch v. Widger, supra; McCormick v. Terry*, 205 Neb. 650, 289 N.W.2d 516 (1980). We conclude that standard has been met here; indeed a clearer case of adverse possession can hardly be imagined.

As to the remaining issue, the uncontradicted evidence is that the cost of hiring someone to fill the postholes would be $200. The trial court awarded the Schriners damages in the sum of $150, and they have not appealed as to the amount of the judgment. Since the plaintiff Paulson installed fenceposts on the Schriners' land, it is obvious that Paulson must bear the cost involved in returning the land to its former condition. See, *Spilinek v. Spilinek, ante* p. 35, 337 N.W.2d 122 (1983); *Wiedeman v. James E.*

*Simon Co., Inc., supra*; *George Rose Sodding & Grading Co., Inc. v. City of Omaha*, 187 Neb. 683, 193 N.W.2d 556 (1972), *appeal on remand* 190 Neb. 12, 205 N.W.2d 655 (1973).

AFFIRMED.